743 A.2d 390

COMMONWEALTH of Pennsylvania, Appellee,

v.

Derrick RAGAN, Appellant.

Supreme Court of Pennsylvania.

Submitted July 2, 1999.

Decided Dec. 22, 1999.

Reargument Denied Feb. 3, 2000.

112

Fortunato N. Perri, Jr., Philadelphia, for Derrick Regan.

Catherine Marshall, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

Derrick Ragan (Appellant) appeals [1] from the Order of the Court of Common Pleas of Philadelphia County (PCRA Court), which denied his request for relief pursuant to the Post Conviction Relief Act [2] (PCRA). A jury convicted Appellant for murder of the first degree,[3] possessing instruments of

---

1. 42 Pa.C.S. § 9546(d).
2. 42 Pa.C.S. § 9541 et seq.
3. 18 Pa.C.S. § 2502(a).

crime,[4] and recklessly endangering another person,[5] and a trial court entered a Judgement of Sentence imposing the death penalty. For the following reasons, we affirm the Order of the PCRA Court.

## I. FACTS AND PROCEDURAL HISTORY

The Opinion that provided the decision of this Court in Appellant's direct appeal, *Commonwealth v. Ragan*, 538 Pa. 2, 645 A.2d 811 (1994), summarized the facts of the case as follows:

> This case arises from an incident which claimed the life of the victim, Darren Brown, on June 26, 1990. At approximately 4:00 p.m. on that date the victim's brother, Wendell Brown, became involved in an altercation over who should use a basketball court with one William Wingate, a friend of appellant's, at the Tustin playground in West Philadelphia. The fight, however, was broken up and Wendell left the playground. Wendell later returned to the playground where he encountered appellant, whom he had seen earlier with Wingate. Wendell told appellant to tell Wingate that a basketball game was not worth fighting over. Appellant said, "you're right" and claimed he would convey the message.

> Believing his feud with Wingate was now over, Wendell returned to the playground later that evening with Marcus Watson and several other friends. While Wendell Brown was standing in the playground, Wingate and another man approached him from behind and began bludgeoning Mr. Brown with a baseball bat. The two men then retreated up a flight of nearby steps when Darren Brown came to his brother's aid. Wendell urged Darren that he was all right but Darren responded, "No f__k that, no one f__ks with my brother." He then pointed a finger at the top of the steps and said, "Let's go get them."

4. 18 Pa.C.S. § 907(a).
5. 18 Pa.C.S. § 2705.

The two brothers started up the steps in pursuit of Wendell's assailants, with Darren in the lead. As the two passed appellant who was standing on the steps, Wendell turned and noticed appellant drawing a pistol from his waistband. Wendell punched appellant in the face, shouted for Darren to run, and then fled up the steps. Darren, however, froze and was shot in the chest. He fled a short distance then collapsed. Appellant fired three or four shots at Wendell, who escaped unharmed, and then pursued his already wounded victim. Standing over his victim, he pumped shot after shot into Darren Brown's prostrate body. Appellant then waved his weapon at the crowd and asked, "Does anybody else want some of this?"

Philadelphia Police Officer Rufus Harley and his partner arrived at the scene shortly after the shooting and found a crowd of approximately two hundred people scrambling for the exits of the playground. Upon entering, they found the body of Darren Brown lying face down in a pool of blood. He had been shot thirteen times.[5]

---

5. The ballistics evidence introduced at trail [sic], as well as several witnesses, suggested that there was at least one additional gunman, who was never identified.

After the shooting, appellant fled to the home of his girlfriend, Tameka Brown. At 5:30 a.m. the next morning, he called his friend Kerry Pleasant and arranged for Pleasant to pick him up at Tameka Brown's residence at 6:00 a.m. The two then drove to North Philadelphia where Pleasant dropped off appellant.

*Ragan,* 645 A.2d at 816–17.

On July 12, 1990, the police arrested Appellant and charged him with the murder of Darren Brown. The Commonwealth tried Appellant before a jury in the Philadelphia County Court of Common Pleas (trial court). The jury returned a verdict of guilty of first-degree murder, possessing an instrument of a crime, and recklessly endangering another person. The trial court conducted a penalty hearing, as required by the Sen-

tencing Code,[6] and the jury found one aggravating circumstance,[7] Appellant had previously been convicted of murder of the first degree,[8] 42 Pa.C.S. § 9711(d)(10), and two mitigating circumstances, the age of Appellant at the time of the crime, 42 Pa.C.S. § 9711(e)(4), and his family environment under the "other evidence" mitigating circumstance, 42 Pa.C.S. § 9711(e)(8). On October 2, 1991, finding that the aggravating circumstance outweighed the mitigating circumstances, the jury sentenced Appellant to death. After denying Appellant's post-trial motions at a hearing, the trial court entered a Judgment of Sentence imposing the death penalty against Appellant. On direct appeal, this Court affirmed the Judgment of Sentence of the trial court on July 29, 1994. *Ragan*, 645 A.2d 811.

Appellant filed the instant PCRA petition for relief, his first, with the PCRA Court on December 23, 1996.[9] The PCRA Court dismissed Appellant's petition without a hearing by Order, dated May 18, 1998. Appellant now appeals the dismissal to this Court.

## II. *DISCUSSION*

### A. *PCRA*

▉▉▉ A petitioner seeking relief pursuant to the PCRA is eligible only if he establishes, by a preponderance of the

**6.** 42 Pa.C.S. § 9711(a).

**7.** The Commonwealth had offered an additional aggravating circumstance, the Appellant knowingly created a grave risk of death to others, 42 Pa.C.S. § 9711(d)(7), which the jury did not find.

**8.** At the time Appellant killed Darren Brown, he was wanted as a convicted fugitive for the killing of Anthony Thomas on June 15, 1990.

**9.** Generally, all PCRA petitions must be filed within one year of the date that judgment becomes final. 42 Pa.C.S. § 9545(b). Pursuant to the 1995 Amendments to the PCRA, this Court will review petitions filed more than one year after final judgment, if those petitioners, like Appellant, seek collateral relief for the *first time* from criminal convictions occurring before the effective date of the amendments, and they file the petitions within one year of the effective date of the amendments, i.e., by January 17, 1997. *See* 42 Pa.C.S. § 9545, comment (describing application of amendments to judgments made final on or before the effective date of the 1995 Amendments, January 16, 1996); *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 641 (1998).

evidence, that (1) his conviction resulted from one or more of the enumerated errors or defects provided in Section 9543(a)(2) of the PCRA; (2) he has not waived or previously litigated the issues he raises; and (3) the failure to litigate the issue prior to or during trial, or on direct appeal could not have been the result of any rational, strategic, or tactical decision by counsel. 42 Pa.C.S. § 9543(a)(2), (3), (4); *Commonwealth v. Carpenter,* 555 Pa. 434, 725 A.2d 154, 160 (1999). A petitioner has waived an issue if the petitioner could have raised the issue but failed to do so before trial, at trial, on appeal, or in a prior state post-conviction proceeding. 42 Pa.C.S. § 9544(b); *Commonwealth v. Lark,* 548 Pa. 441, 698 A.2d 43, 46 (1997). A petitioner has previously litigated an issue if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue, or the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. 42 Pa.C.S. § 9544(a)(2), (3); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 698 (1998).

## B. *ISSUES*

Appellant frames each of his eight issues as claims of ineffectiveness of trial counsel, which is one of the possible grounds for obtaining post-conviction relief.[10] 42 Pa.C.S. § 9543(a)(2)(ii). Seven of the eight issues concern alleged ineffectiveness for failing to object to a variety of jury instructions by the court. The remaining issue attacks the effectiveness of Appellant's trial counsel for failing to object to the alleged improper questions posed by the prosecutor to Appellant. To prove a claim of ineffectiveness of counsel, a petitioner must prove beyond a preponderance of the evidence the following: (1) the underlying claim is of arguable merit; (2) counsel's performance had no reasonable basis; and (3) counsel's ineffectiveness prejudiced defendant. *Commonwealth v. Copenhefer,* 553 Pa. 285, 719 A.2d 242, 250 (1998), *cert. de-*

10. Appellant purportedly presents nine issues, but he actually poses an identical question twice in his Statement of Questions Presented. We will review only the eight issues that Appellant discusses. *See* Pa.R.A.P. 2119.

*nied,* —— U.S. ——, 120 S.Ct. 86, 145 L.Ed.2d 73 (1999). Furthermore, a petitioner cannot obtain post-conviction relief by alleging ineffectiveness of prior counsel but presenting previously litigated claims shrouded under novel theories to support the claim of ineffectiveness. *Commonwealth v. Pirela,* 556 Pa. 32, 726 A.2d 1026, 1032 (1999).

## 1. *Lack of Jury Instruction on Voluntary Manslaughter*

Appellant first claims that his trial counsel ignored his request to seek a jury charge on voluntary manslaughter and failed to object when the trial court did not include such an instruction. Specifically, Appellant argues that he was entitled to a jury instruction on "heat of passion" voluntary manslaughter.[11] The trial court instructed the jury on the elements of first-degree and third-degree murder but not voluntary manslaughter. According to Appellant, at the time of his trial, federal law required Pennsylvania courts to provide, upon request, an instruction on voluntary manslaughter in all murder indictments, even in the absence of evidence to prove the elements of voluntary manslaughter. In support of this proposition, Appellant cites *United States ex rel. Matthews v. Johnson,* 503 F.2d 339, 346 (3d Cir.1974) (en banc), *cert. denied,* 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975).[12]

11. The Crimes Code defines "heat of passion" voluntary manslaughter, thus:
 (a) General rule.—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
 (1) the individual killed; or
 (2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
 18 Pa.C.S. § 2503.

12. In *Matthews,* the Third Circuit held, in an *en banc* decision, that a Pennsylvania trial court violated the due process clause of the Fourteenth Amendment to the United States Constitution whenever it refused to instruct a jury on voluntary manslaughter in a murder indictment. 503 F.2d at 345–46. In 1968, when Matthews was tried, the Pennsylvania's Penal Code of 1939 was in effect. *Id.* at 345 n. 19. The Third Circuit found that, because the Penal Code of 1939, Act of June 24, 1939, P.L. 872, §§ 701 and 703, *as amended,* Dec. 1, 1959, P.L.

 In response to Appellant's assertion of controlling federal law, we first note that, in interpreting federal case law, this Court is not bound by decisions of federal courts inferior to the United States Supreme Court, even though we may look to them for guidance. *Commonwealth v. Laird*, 555 Pa. 629, 726 A.2d 346, 359 n. 12 (1999); *Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 39 (1998). Second, the issue before us rests squarely on a review of state law. Pennsylvania common law has evolved considerably since the Third Circuit announced *Matthews*.[13] By the time the Third Circuit had published *Matthews*, we had already changed our substantive law to require an instruction on voluntary manslaughter whenever murder was at issue, even in the absence of evidence of passion or provocation.[14] *Commonwealth v. Jones*, 457 Pa.

1621 § 1, 18 Pa.C.S. §§ 4701 and 4703, provided no legal standards for courts to follow when choosing whether or not to give a requested charge on voluntary manslaughter, a refusal to give an instruction on involuntary manslaughter in a murder indictment permitted arbitrary results in similar cases. *Id.* at 346.

13. In addition, the Third Circuit has questioned the authority of *Matthews* in its own jurisprudence. The Third Circuit has affirmatively overruled *Matthews* to the extent that it implied that it was *per se* reversible error for a trial court to refuse to charge on all lesser included offenses. *See Geschwendt v. Ryan*, 967 F.2d 877, 884–85 & n. 13 (3d Cir.), *cert. denied*, 506 U.S. 977, 113 S.Ct. 472, 121 L.Ed.2d 379 (1992) (citing *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) for the proposition that, in cases involving offenses on a ladder, a violation of federal due process that occurs when a trial court refuses to charge the offense at the bottom rung, is harmless, provided that the jury returns a guilty verdict for an offense higher up rather than for an intermediate offense which was also charged). Notably, in the case, *sub judice*, the jury convicted Appellant of first-degree murder, the highest rung on the offense ladder. As charged, the jury could have also found Appellant guilty of third degree murder or acquitted him. N.T., Sept. 30, 1991, at 1149.

14. In a divided opinion, this Court recognized that, because the 1939 Penal Code did not properly distinguish the offenses of murder and voluntary manslaughter, trial courts lacked enforceable standards to guide their discretion when to instruct on voluntary manslaughter. *Commonwealth v. Jones*, 457 Pa. 563, 319 A.2d 142, *cert. denied*, 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974). Three justices decided the issue based on the supervisory power of the Supreme Court of Pennsylvania. *Id.* at 148. Three other justices concluded that protections of due process and equal protection required that trial courts give voluntary manslaughter instruction in all murder indictments. *Id.* at 151–52. One justice did not participate in the decision.

563, 319 A.2d 142, 148, *cert. denied,* 419 U.S. 1000, 95 S.Ct. 316, 42 L.Ed.2d 274 (1974). Since 1983, applying the 1972 Crimes Code,[15] we have repeatedly held that a voluntary manslaughter instruction is warranted only where the offense is at issue and the evidence would support such a verdict. *See Commonwealth v. Robinson,* 554 Pa. 293, 721 A.2d 344, 353–54 (1998); *Commonwealth v. Speight,* 544 Pa. 451, 677 A.2d 317, 324–25 (1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 852 (1997); *Commonwealth v. Browdie,* 543 Pa. 337, 671 A.2d 668, 673–74 (1996); *Commonwealth v. Williams,* 537 Pa. 1, 640 A.2d 1251, 1265–66 (1994); *Commonwealth v. Carter,* 502 Pa. 433, 466 A.2d 1328, 1332–33 (1983); *see also Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399, 400 (1980) (holding that trial court may charge on involuntary manslaughter only where evidence exists to support such a verdict). The Commonwealth tried Appellant for murder in 1991 under the 1972 Crimes Code, and the relevant case law applies to his case.

■ Pursuant to the 1972 Crimes Code, a person is guilty of "heat of passion" voluntary manslaughter if at the time of the killing he acted under a sudden and intense passion resulting from serious provocation by the victim. 18 Pa.C.S. § 2503(a); *Commonwealth v. Walker,* 540 Pa. 80, 656 A.2d 90, 95–96, *cert. denied,* 516 U.S. 854, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995). " 'Heat of passion' includes emotions such as anger, rage, sudden resentment or terror, which renders the mind incapable of reason." *Speight,* 677 A.2d at 324–25.

■ Absent evidence of negligence or accident, a "heat of passion" voluntary manslaughter charge is improper where the victim is not the person who provoked the defendant. *Robinson,* 721 A.2d at 353–54; *Commonwealth v. Jones,* 546 Pa. 161, 683 A.2d 1181, 1197 (1996). The record belies Appellant's insinuation that the killing occurred under the "heat of passion" as a result of a "serious provocation" from the victim. Furthermore, Appellant presented no evidence to demonstrate

**15.** Act of Dec. 6, 1972, P.L. 1482, *as amended,* Nov. 17, 1995, P.L. 1144, 18 Pa.C.S. §§ 2501 and 2503.

that he negligently or accidentally shot the victim while attempting to kill his brother. Instead, Appellant presented evidence to support his alibi theory that he was not at that park when the murder occurred. In contrast, the jury heard evidence from the Commonwealth that, after Appellant drew a gun and pointed it at the victim and his brother, the brother of the victim punched Appellant and ran from the scene. The evidence supports, and the jury found, that, following the assault and flight by the victim's brother, Appellant took deliberate aim, shot the victim in the chest, and then fired several more shots directly into his prone body. We find that the trial court did not err by omitting an instruction on voluntary manslaughter because Appellant presented no evidence to justify such a verdict. There is no ineffectiveness of counsel for failing to request an unwarranted instruction. *See Lark* 698 A.2d at 50. Accordingly, Appellant's first claim of ineffectiveness is without arguable merit.

### 2. *Jury Instructions on Witness Credibility*

The next claim is that trial counsel was ineffective for failing to object to two jury instructions concerning the ability of the jury to determine witness credibility. First, Appellant states that the trial court deviated from the standard jury instruction by inviting the jurors to use their instincts to discern what testimony is credible. Appellant claims the instruction is unconstitutionally vague in violation of his due process rights because it failed to provide the jury with sufficient guidance to aid in its deliberation. Second, Appellant argues that the trial court misled the jury into believing that it could disregard any testimony that was contradicted. He claims that the instruction prevented Appellant from receiving a fair trial because, in an adversarial arena, virtually all evidence is contradicted.

A trial court has wide discretion in phrasing jury instructions. *Commonwealth v. Hawkins,* 549 Pa. 352, 701 A.2d 492, 511 (1997), *cert. denied,* 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998). When reviewing an allegation of an incorrect jury instruction, the appellate court must view the entire charge to determine whether the trial court clearly

and accurately presented the concepts of the legal issue to the jury and should not reverse, as a result of the instruction, unless the trial court committed an abuse of its discretion. *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242, 1257 (1999); *Commonwealth v. Gibson*, 553 Pa. 648, 720 A.2d 473, 481 (1998) *cert. denied,* —— U.S. ——, 120 S.Ct. 132, 145 L.Ed.2d 111 (1999). We will not examine a phrase or sentence of an instruction in a vacuum. Rather, when we evaluate a challenge to a charge, we must consider how each part fits together to convey a complete legal principle. *See Commonwealth v. Saunders*, 529 Pa. 140, 602 A.2d 816, 818 (1992).

Concerning the ability of the jury to determine credibility of a witness, we have held that:

> The question of whether a particular witness is testifying in a truthful manner is one that must be answered in reliance upon inferences drawn from the ordinary experiences of life and common knowledge as to the natural tendencies of human nature, as well as upon observations of the demeanor and character of the witness. The phenomenon of lying, and situations in which prevarications might be expected to occur, have traditionally been regarded as within the ordinary facility of jurors to assess.

*Commonwealth v. Crawford*, 553 Pa. 195, 718 A.2d 768, 772 (1999) (citing *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920, 922 (1986)) (citations omitted).

■ Appellant contends that the trial court erred by telling the jury, "In other words, you have to use your instincts." N.T., Sept. 30, 1991, at 1122. However, Appellant misrepresents the instruction given by the trial court. Although the trial court instructed the jurors that they might need to use their instincts to separate fact from fiction, that was not the only direction it provided. The trial court asked the jury to consider a variety of common perceptions to determine witness credibility. N.T., Sept. 30, 1991, at 1121–24. Some of the multiple factors included the physical position of the witness, the physical and mental characteristics of the witness, the familiarity of the witness with the defendant and events, and the manner in which the witness testified. When the trial

court advised the jurors to rely on their instincts, the judge had just discussed, in depth, the difficulties of discerning truthful testimony. The trial court conveyed to the jury the correct legal standard for assessing the credibility of a witness.

 In a similar argument, Appellant claims that the trial court erred when it asked the jury to consider whether the testimony of a witness was "contradicted by other evidence or testimony or was it supported by any other evidence or testimony." N.T., Sept. 30, 1991, at 1124. Appellant proclaims that this instruction gave the jurors permission to discredit any contradicted testimony. As previously discussed, we will review the effect of an entire instruction, and not just the meaning attributed to a segment of the charge. When the trial court told the jury to consider the effect of conflicting testimony, it did not direct the jury to disregard all contradicted testimony. Instead, the trial court instructed the jury to weigh the importance of any inaccuracy, consider the reason for the discrepancy, and decide whether all, some, or none of the testimony is believable. N.T., Sept. 30, 1991, at 1124–25.

 We also give no credence to the suggestion of the Appellant that the trial court erred by not giving a verbatim recitation of the instructions on credibility of witnesses set forth in the Pennsylvania Suggested Standard Criminal Jury Instructions. Since we have not adopted these suggested instructions, we consider them merely as an aid when evaluating a charge on witness credibility. *See Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d 890, 899 (1999). The trial court gave the jury a comprehensive and clear explanation of the factors it should consider when deciding witness credibility. Moreover, Appellant's allegation of error is ill-founded because the charge of the trial court contains nearly identical language to that found in Instructions 2.04 and 4.17 of the Pennsylvania Suggested Standard Criminal Jury Instructions. *See* Pennsylvania Suggested Standard Criminal Jury Instructions, §§ 2.04, 4.17 (concerning credibility of evidence and witnesses).

The instruction, in its entirety, plainly and accurately informed the jury how to ascertain witness credibility. We find no reason to conclude that the trial court abused its discretion when it gave its charge. Accordingly, this issue lacks merit, and Appellant's trial counsel was not ineffective for failing to object to the instruction.

### 3. *Jury Instruction on Alibi Defense*

Appellant's third claim is that the trial court erred because it did not expressly tell the jury that an alibi defense could raise a reasonable doubt, "even if not wholly believed." The trial court gave the following instruction concerning Appellant's alibi evidence:

> Now, obviously, the defendant cannot be guilty unless he was at the scene of the crime that is alleged. The defendant has offered evidence that he was not present at the scene of the crime, but rather was someplace else.

> You should consider this evidence along with all the other evidence in the case to determine whether the Commonwealth has met its burden of proof beyond a reasonable doubt that a crime was committed and that the defendant himself committed or took part in committing it.

> The defendant's evidence that he was not present either by itself or together with other evidence in the case may be sufficient to raise a reasonable doubt of his guilt in your mind.

> If you have a reasonable doubt of the defendant's guilt, you must find him not guilty.

N.T., Sept. 30, 1991, at 1165.

In support of this allegation of error, Appellant cites *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980), which held that a trial court must provide an alibi instruction whenever a defendant raises an alibi defense. 417 A.2d at 603. Although we used the phrase "even if not wholly believed" in *Pounds*, 417 A.2d at 603, as part of a suggested charge, Appellant makes the same mistake as the defendant in *Commonwealth v. Saunders* by placing greater importance on

these "magic words" than on the effect of the instruction. 602 A.2d at 818.

In *Saunders,* we reviewed the following identical alibi instruction:

> Now, in this case there was also evidence of alibi. Obviously, the defendant cannot be guilty unless he was at the scene of the alleged crime. The defendant in this case has offered evidence to show that he was not present at the scene of the crime but was at another location during the time the crime was allegedly committed. You should consider this evidence along with all the other evidence in the case in determining whether the Commonwealth has met its burden of proving beyond a reasonable doubt that a crime was committed and that the defendant himself committed the crime.

> The defendant's evidence that he was not present either by itself or together with the other evidence may be sufficient to raise a reasonable doubt of his guilt in your minds. If you have a reasonable doubt of the defendant's guilt, then you must find him not guilty.

*Id.* at 817. We held there that "[a]s long as an alibi instruction makes it clear to the jury that a defendant's failure to prove alibi is not in itself a basis for a finding of guilt, the instruction cannot be faulted for failing to parrot the exact language contained in *Pounds.*" *Id.* at 818. *Accord Commonwealth v. Thomas,* 552 Pa. 621, 717 A.2d 468, 478–79 (1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999).

It is apparent that the alibi instruction of the trial court captured the legal principle of an alibi defense, namely that a jury may acquit a defendant who presents an alibi defense, whether they believe all, part, or none, of that evidence, as long as they find that the Commonwealth failed to prove beyond a reasonable doubt his presence at the scene of the crime at the time of its commission. Furthermore, while not controlling, the alibi charge was virtually identical to the instruction recommended in Instruction 3.11 of the Pennsylva-

nia Suggested Standard Criminal Jury Instructions, which also does not contain the specific words sought by Appellant.[16]

### 4. *Jury Instruction on Inferences of Specific Intent to Kill*

 For his fourth claim of ineffectiveness, Appellant maintains that the trial court gave an improper instruction concerning the malice element for first-degree murder. Specifically, Appellant claims that his trial counsel should have objected because the trial court directed the jury to draw an inference that Appellant had a specific intent to kill, if they found that he intended to use a deadly weapon on a vital part of the victim's body. We do not adopt Appellant's portrayal of the instruction at issue. The pertinent text of the challenged charge follows:

> *If* you believe that the defendant intentionally used a deadly weapon on a vital part of a victim's body, you *may* regard that as an item of circumstantial evidence from which you *may, if you decide,* infer that the defendant had the specific intent to kill. That's why I defined for you before what I mean by inferring facts from circumstantial evidence and so on.
>
> The intent to kill *may* also be inferred from all of the surrounding circumstances.

N.T., Sept. 30, 1991, at 1155 (emphasis added).

 To find a defendant guilty of first-degree murder, the jury must find that the Commonwealth proved beyond a

---

16. The instruction set forth in the Pennsylvania Suggested Standard Criminal Jury Instructions, § 3.11 is as follows:

ALIBI
Obviously the defendant cannot be guilty unless he was at the scene of the alleged crime. The defendant has (testified) (offered evidence) to show that he was not present at the scene but rather was at _____. You should consider this evidence along with all the other evidence in the case in determining whether the Commonwealth has met its burden of proving beyond reasonable doubt that a crime was committed and that the defendant himself committed (or took part in committing) it. The defendant's evidence that he was not present, either by itself or together with other evidence, may be sufficient to raise a reasonable doubt of his guilt in your minds. If you have a reasonable doubt of the defendant's guilt, you must find him not guilty.

reasonable doubt that (1) a human being was unlawfully killed; (2) the person accused did the killing; (3) the killing was done with malice aforethought; and (4) the killing was deliberate and premeditated. 18 Pa.C.S. § 2502(a), (d); *Commonwealth v. Cox,* 556 Pa. 368, 728 A.2d 923, 929 (1999); *Commonwealth v. Marinelli,* 547 Pa. 294, 690 A.2d 203, 211 (1997), *cert. denied,* 523 U.S. 1024, 118 S.Ct. 1309, 140 L.Ed.2d 473 (U.S.Pa.1998). The element that distinguishes first-degree murder from all other degrees of murder is the intent to kill, i.e., the presence of a willful, deliberate, and premeditated killing. 18 Pa.C.S. § 2502(a), (d); *Commonwealth v. Wilson,* 543 Pa. 429, 672 A.2d 293, 297, *cert. denied,* 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996). It is well settled law in Pennsylvania that the Commonwealth may prove specific intent to kill by circumstantial evidence, and, therefore, a jury may infer the requisite malice to establish first-degree murder from the defendant's use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Cox,* 556 Pa. 368, 728 A.2d 923, 929 (1999); *Commonwealth v. Hall,* 549 Pa. 269, 701 A.2d 190, 196–97 (1997), *cert. denied,* 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998); *Commonwealth v. Rivers,* 537 Pa. 394, 644 A.2d 710, 712 (1994), *cert. denied,* 516 U.S. 1175, 116 S.Ct. 1270, 134 L.Ed.2d 217 (1996); *Commonwealth v. McAndrews,* 494 Pa. 157, 430 A.2d 1165, 1166 (1981); *Commonwealth v. Murray,* 460 Pa. 605, 334 A.2d 255, 257 (1975). Appellant offers no controlling and conflicting cases to suggest that our law precludes the use of inferences to find the specific intent of first-degree murder.

The instruction by the trial court correctly articulated a manner in which the jury could determine whether Appellant possessed a specific intent to kill the victim. Again, although not controlling, the Pennsylvania Suggested Standard Criminal Jury Instructions offer a nearly identical instruction concerning the use of facts to infer a specific intent to kill.[17]

17. Instruction 15.2502(A)(5) of the Pennsylvania Suggested Standard Criminal Jury Instructions provides the following portion of the First-Degree Murder instruction:

When deciding whether the defendant had the specific intent to kill you should consider all the evidence regarding his words and conduct

Pennsylvania Suggested Standard Criminal Jury Instructions, § 15.2502(A)(5). Appellant's argument that our judicial system condemns the use of inferences for evaluating the degree of homicide is incorrect. Furthermore, contrary to Appellant's impression, we find nothing in the instruction of the trial court that the jurors could have interpreted as requiring them to draw an inference. *See Commonwealth v. Karenbauer*, 552 Pa. 420, 715 A.2d 1086, 1098 (1998), *cert. denied*, 526 U.S. 1021, 119 S.Ct. 1258, 143 L.Ed.2d 354 (1999) (holding that instruction on inference of specific intent to kill did not usurp jury's role as fact finder). The trial court did not tell the jury that Appellant fired a gun into the victim's chest. Rather, the charge plainly announced that the jurors could infer a specific intent to kill, if they found the surrounding circumstances permitted such an inference. We find that the trial court did nothing to interfere with the jury's function as fact finder. Because Appellant's claim is without merit, trial counsel was not ineffective for failing to object to this instruction.

### 5. *Jury Instruction on the Commonwealth's Burden of Proof*

■■■ Next, Appellant claims that the instruction by the trial court on the Commonwealth's burden of proof was so misleading that constitutional safeguards necessitate a new trial. The part of the charge that Appellant alleges violated of his due process rights follows:

So to summarize all of that again, you may not find the defendant guilty based on a mere suspicion of guilt. The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If it meets that burden, the defendant is no longer presumed innocent and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden, then you must find him not guilty.

and the attending circumstances that may show his state of mind, including _____. (If you believe that the defendant intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that the defendant had the specific intent to kill.)

N.T., Sept. 30, 1991, at 1120–21. Although he concedes that the trial court gave the jury a "fair definition of the Commonwealth's burden of proof," Appellant argues that this summary distorted an otherwise clear and accurate charge. Appellant's Brief, at 30. Specifically, Appellant attacks the phrase "mere suspicion of guilt" and claims that it creates an impression of a burden of proof below what is required by law.

After examining the entire charge concerning the Commonwealth's burden of proof, we conclude that trial court committed no error. The trial court repeatedly instructed the jury that the law presumes Appellant is innocent, places no duty on him to prove his own defense, and places all responsibility on the Commonwealth to prove Appellant's guilt beyond a reasonable doubt. N.T., Sept. 30, 1991, at 1118–21. The instruction clarified that the presumption of innocence remains in tact until defeated by evidence. N.T., Sept. 30, 1991, at 1118. The charge conveyed that a reasonable doubt must arise out of the presence or lack of evidence concerning an element of the crime. N.T., Sept. 30, 1991, 1120. The trial court informed the jury that a doubt "may not be an imagined one, nor may it be manufactured to avoid carrying out an unpleasant duty." N.T., Sept. 30, 1991, 1120. The jury also heard that, while the Commonwealth need not prove its case to a "mathematical certainty," it will not have met its burden, if there exists a doubt in the mind of any juror that "would restrain a reasonably careful and sensible person from acting upon a matter of importance in his or her own affairs." N.T., Sept. 30, 1991, 1120.

Without impinging on the discretion of the trial courts to phrase their own instructions, we have acknowledged charges in other cases that would clearly enable a jury to determine whether the Commonwealth has met its burden of proof.

It is true that this Court has never required a single standard charge on reasonable doubt. However, we also have never stated that a jury may be given a reasonable doubt charge that fails to define reasonable doubt.

Moreover, we have repeatedly placed our imprimatur on the charge expressed in *Commonwealth v. Donough*, 377 Pa. 46, 51—52, 103 A.2d 694, 697 (1954).

"A standard and approved form of charge on this point would be: 'The defendant comes before you presumed to be innocent and the burden is upon the Commonwealth to prove his guilt beyond a reasonable doubt. A reasonable doubt cannot be a doubt fancied or conjured up in the minds of the jury to escape an unpleasant verdict; it must be an honest doubt arising out of the evidence itself, the kind of doubt that would restrain a reasonable man (or woman) from acting in a matter of importance to himself (or herself).' "

We have many times approved of the charge recommended in *Commonwealth v. Kluska*, 333 Pa. 65, 74, 3 A.2d 398, 403 (1939).

'As a standard and approved form of charge, however, we are of opinion that the jury should be told either . . . that they should not condemn unless so convinced by the evidence that they would venture to act upon that conviction in matters *of the highest importance* to their own interests, or . . . that a reasonable doubt was one that would cause them to hesitate to act in any of the *important* affairs of their own lives.'

*Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258, 261–62 (1974) (citations and notes omitted).

The choice of words selected by the trial court differs in no substantial way from similar instructions on reasonable doubt that this Court has previously approved. *See Porter*, 728 A.2d at 899–900; *Commonwealth v. Jones*, 529 Pa. 149, 602 A.2d 820, 822–23 (1992). A near verbatim rendition of the trial court's full charge is provided in Instruction 7.01 of the Pennsylvania Suggested Standard Criminal Jury Instructions.[18] The concluding admonition to the jurors that they

18. The final paragraph of Instruction 7.01 of the Pennsylvania Suggested Standard Criminal Jury Instructions mirrors the portion of the charge challenged by Appellant. Instruction 7.01 states:

could not find Appellant guilty based on a "mere suspicion of guilt" reinforced the court's earlier dictate that they could make no finding of guilt unless it was based on a "careful and impartial consideration of the evidence." N.T., Sept. 30, 1991, at 1118. Accordingly, there is no merit to Appellant's assertion that his trial counsel was ineffective for not objecting to the proper instruction on reasonable doubt.

### 6. Cross–Examination of Appellant Concerning Improper Influence of a Witness

During the trial, Appellant took the stand and submitted to cross-examination by the Commonwealth. One of the prosecutor's lines of question was whether Appellant threatened, bribed, or forced witness Tameka Brown to testify for him. The portion of the cross-examination at issue follows:

Q [Prosecutor]: Did you threaten or bribe or in anyway force Tameka Brown to come to court and testify in the manner that she did?

A [Appellant]: No.[19]

N.T., Sept. 26, 1991, at 954. Appellant contends that the prosecution had no basis for implying that he had obstructed justice by influencing a witness. He asserts that his trial counsel was ineffective for failing to object to the Common-

> So, to summarize, you may not find the defendant guilty based on a mere suspicion of guilt. The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If it meets that burden, then the defendant is no longer presumed innocent and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden, then you must find him not guilty.

**19.** The prosecutor followed the first question concerning coercion with an immediate related query, and Appellant's trial counsel entered an objection.

> Q: Did you, by the use of sympathy, affection, the appearance of love or endearment persuade her to testify in this courtroom in the way that she did?
> [Defense]: I object.
> The Court: Overruled.
> [Defense]: Improper.
> Q: In other words, Mr. Ragan, did you use Tameka Brown for your own purposes in this case?
> A: No, I did not.

N.T., Sept. 26, 1991, at 954–55.

wealth's questions concerning other crimes and, although not clear from his brief, for not requesting a mistrial, which he claims prejudiced him in violation of his due process rights.

Appellant frames the legal issue as a claim of ineffectiveness of counsel, but he is also arguing that the Commonwealth engaged in prosecutorial misconduct, which his counsel failed to prevent or correct. As we stated earlier, the PCRA affords no eligibility for relief from waived claims. 42 Pa.C.S. § 9543(a)(3). During his direct appeal, Appellant did not claim that there was any error when the Commonwealth asked him about his alleged influence over Ms. Brown.[20] Having failed to raise this issue, it is waived. However, because he brings the related allegation of ineffectiveness of counsel in his first collateral appeal, it is eligible for review. Nonetheless, for the following reasons, he fails to establish error from ineffectiveness of counsel.

 "Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Baez*, 554 Pa. 66, 720 A.2d 711, 729 (1998), *cert. denied* —— U.S. ——, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999); *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 231 (1995); *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61, 74 (1994), *cert. denied* 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). When evaluating the prejudicial effect of leading questions asked by a district attorney on cross-examination, we must consider the substance of the questions, the circumstances in which they are asked, and the response they evoked. *See Commonwealth v. O'Hannon*, 557 Pa. 256, 732 A.2d 1193, 1196 (1999); *Commonwealth v. Doswell*, 533 Pa. 228, 621 A.2d 104, 106 (1993); *Commonwealth v. Hoskins*, 485 Pa. 542, 403 A.2d 521, 528 (1979); *Commonwealth v. Perillo*,

---

**20.** Of the thirty-three issues that Appellant raised in his direct appeal to this Court, twenty-four were allegations of prosecutorial misconduct. *Ragan*, 645 A.2d at 818. Three of the claims of prosecutorial misconduct were related to Ms. Brown's alibi testimony.

474 Pa. 63, 376 A.2d 635, 639 (1977); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492, 493 (1971).

In *O'Hannon*, the prosecution asked the defendant whether he had threatened his co-conspirators to perjure their testimony. The Superior Court found that the trial court allowed the admission of prejudicial evidence of prior bad acts and failed to give the jury a timely cautionary instruction, and it reversed the defendant's judgment of sentence and remanded for a new trial. We reversed the Superior Court. The prosecution's questions were not improper because the defendant answered the questions in the negative, the trial counsel entered a timely objection to the questions, and the trial court had given the jury both a cautionary and final instruction that jurors may not consider questions as evidence. *O'Hannon*, 732 A.2d at 1196. Because the defendant was not prejudiced by the admission of any improper evidence, we concluded that the trial court did not abuse its discretion or commit an error of law. *Id.*

■■■ The facts in the present case are similar to *O'Hannon*. The trial court instructed the jury prior to opening arguments and in its final instructions that comments by attorneys are not evidence. The court emphasized that "[q]uestions are not evidence. An attorney can ask any questions he wants. It's the answer that is evidence." N.T., Sept. 16, 1991, at 6. When asked whether he had threatened Ms. Brown to testify in his favor, Appellant flatly denied any such action. Furthermore, Appellant presents an inaccurate representation by stating that his trial counsel "sat moot" during this part of the Commonwealth's cross-examination. Appellant's Brief, at 35. Although trial counsel did not object immediately after the prosecution asked the question at issue, his objection came close in time and preceded a similar inquiry concerning coercion.

"[E]very improper and inflammatory leading question by a district attorney does not necessarily require a new trial." *Hoskins*, 403 A.2d at 528 (citing *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975)). The central inquiry remains whether the effect of the question gave the jurors a fixed,

mental bias or hostility against the defendant, so as to corrupt their truth-determining function. The effect of such questions "depends upon the atmosphere of the trial." *Id.* at 528 (quoting *Stoltzfus, supra* ).

In *Commonwealth v. Perillo,* we granted a new trial because improper questions by the prosecution prejudiced a defendant. In that case, both parties had routinely disregarded court rulings and entered into shouting matches, creating a "circus" atmosphere in the courtroom. *Perillo,* 376 A.2d at 639. After the trial had already descended into pandemonium, the prosecution posed questions to a defense witness that implied he was lying and the defendant had bribed the witness to commit perjury. We held that the cumulative effect of the circus atmosphere and the highly prejudicial nature of the remarks led us to the conclusion that the only "appropriate relief" was a new trial. *Id.* at 639–40.

Here, there was no circus atmosphere. We have reviewed the record in this case and can find no semblance of courtroom chaos or other circumstances that might have created an environment ripe for bias or hostility in the minds of the jurors. It is worth noting that, on direct appeal, we previously held that there was no merit to Appellant's claim that he was prejudiced by the remark of the Commonwealth, in closing argument, that he had presented a lying alibi witness. *Ragan,* 645 A.2d at 829. It was our finding on direct appeal that the Commonwealth had presented evidence sufficient to permit the jury to infer a bias by Ms. Brown for impeachment purposes.[21] *Id.* The facts indicate that the Commonwealth had a good faith basis for attempting to prove a bias. In the present appeal, Appellant's claim that the prosecution's question had a prejudicial effect on him by generating bias or hostility among the jurors lacks arguable merit.[22] In addition,

21. Similarly, we held that the trial court did not err by admitting evidence of Appellant's fugitive status to demonstrate a bias by Ms. Brown, and we rejected Appellant's argument that he was prejudiced by the Commonwealth's suggestion that Appellant might have manipulated the witness. *Ragan,* 645 A.2d at 820 & n.9, 824–25.

22. Appellant compares his claim of ineffectiveness to *Commonwealth v. Doswell, supra.* In *Doswell,* we held that trial counsel was ineffective

Appellant fails to develop each element of a claim of ineffectiveness of counsel to afford us an opportunity to conduct a meaningful review. Accordingly, we hold that Appellant has not proven that his counsel was ineffective for failing to make an immediate objection to the Commonwealth's question concerning coercion of a defense witness.

### 7. & 8. Lack of Jury Instruction on Other Crimes & Jury Instruction on the Use of Evidence in the Penalty Deliberation

■ As we previously discussed, the burden is on the petitioner seeking post-conviction review to establish that he has not previously litigated the issues he raises. A petitioner cannot obtain relief under the PCRA by advancing variations of claims previously litigated and then alleging ineffectiveness of prior counsel for not presenting those theories. *Carpenter*, 725 A.2d 154, 167; *Copenhefer*, 719 A.2d at 252.

Appellant's final guilt stage claim revolves around the Commonwealth's cross-examination of Ms. Brown that revealed that Appellant was a "fugitive" and "in some kind of trouble" when she allowed him to stay with her. N.T., Sept. 25, 1991, at 858–59, 874–75. Appellant asserts that his trial counsel was ineffective for failing to request an instruction to the jury limiting the use of this testimony, which he brands as "other crimes" evidence, exclusively for determining bias on the part of the witness. For his only penalty stage claim, Appellant claims that his counsel was ineffective for failing to object to

for failing to object to the prosecution's use of a criminal charge, which did not result in a conviction, to impeach a defense witness. 621 A.2d at 106. The first and primary distinction between these cases is that, unlike the use of a criminal charge to impeach a witness, there is no rule that a question that suggests the defendant was involved in witness tampering is *per se* improper. *See O'Hannon*, 557 Pa. 256, 732 A.2d 1193. Second, the trial counsel in *Doswell* failed to object, both during cross-examination and closing argument, even after it became evident that the witness had not been convicted of the specific crime. Appellant's counsel entered an objection to the question. Finally, the defendant in *Doswell* was severely prejudiced when the prosecution improperly impeached his only non-party witness. Here, there were other witnesses and Appellant does not establish that the Commonwealth's question, answered in the negative, fixed a bias in the minds of the jurors.

the trial court's penalty phase charge that instructed the jury to consider all evidence admitted during the proceeding. Specifically, Appellant complains that his counsel should have objected to certain testimony the prosecution elicited from his mother and sought a limiting instruction to exclude the evidence, which he alleges the trial court improperly admitted. This Court has unmistakably reviewed both issues, and variations of them, in our opinion on direct appeal. *See Ragan*, 645 A.2d at 819–20, 822, 825, 830. Appellant does not demonstrate that these issues are anything but previously litigated claims. Thus, these claims afford Appellant no more eligibility for relief than his other claims.

## III. *CONCLUSION*

For the foregoing reasons, we affirm the Order of the Court of Common Pleas of Philadelphia County, denying Appellant's petition for relief under the Post Conviction Relief Act.[23]

**23.** We have directed the prothonotary of the Supreme Court of Pennsylvania to transmit, within ninety days, the full and complete record of the trial, sentencing hearing, imposition of sentence, and review by this Court to the Governor, and the prothonotary is to give contemporaneous notice of this transmission to the Secretary of Corrections, pursuant to 42 Pa.C.S. § 9711(i).