J-S27026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BERNIE BROWN :
:
Appellant : No. 834 EDA 2017

Appeal from the PCRA Order January 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014866-2008

BEFORE: SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.: **FILED MAY 29, 2018**

Bernie Brown appeals, *pro se*, from the order entered in the Court of Common Pleas of Philadelphia County dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The trial court set forth the relevant factual background of the case as follows:

On August 3, 2008 [Brown] and his neighbor, Shakeya Green, had a dispute over an illegally parked car in front of 1255 Adams Avenue in Philadelphia. Ms. Green, who lived with her boyfriend, Christopher Lancaster, and their two children, had noticed that a car was parked in the middle of Adams Avenue and was thus blocking incoming and outgoing traffic. Ms. Green knocked on [Brown's door;] [Green] had never met [Brown]. [Brown] and his girlfriend, to whom the car belonged, answered the door, and the three got into an argument. Ms. Green then called Mr. Lancaster, who came over and "had words" with [Brown].

Two days later, on August 5, 2008, Mr. Lancaster was sitting in his Jeep in front of his apartment at 1255 Adams Avenue. Mr.

Lancaster was talking to his uncle, who lived across the street, when [Brown] approached him.  [Brown] asked Mr. Lancaster if he wanted to talk about the argument they had two days before.  Mr. Lancaster waved him away and turned his back to [Brown].  As soon as he turned around, [Brown] shot Mr. Lancaster in the back. The gunshot spun him around so that he was facing [Brown].  As [Brown] kept shooting, Mr. Lancaster attempted to crawl under his Jeep.  This led [Brown] to continue to shoot at Mr. Lancaster under the Jeep. Mr. Lancaster screamed to [Brown], "You already shot me, what else do you want to do, kill me now?" This failed to deter [Brown], who continued to shoot, ultimately hitting [Mr. Lancaster] eight times.  [Brown] then fled the scene in a black car.  Mr. Lancaster's uncle tried to help him into his apartment and then called the police.

At the time of the shooting, Ms. Green had been sleeping in the apartment she shared with Mr. Lancaster.  She was awakened by gunshots, looked out the bedroom window and saw [Brown] fire the last two shots at Mr. Lancaster.  She ran downstairs to the kitchen window, where she saw [Brown] leave in a black car.  Ms. Green then called the police.

Mr. Lancaster was transported to Temple University Hospital, where he remained for [2½] weeks.  He had been shot in the back, thigh, knee, chin, armpit, and arm.  Before he was brought into surgery, detectives showed Mr. Lancaster a photograph of [Brown], and Mr. Lancaster identified [Brown] as the shooter. Two days later, police returned to the hospital to interview Mr. Lancaster, and he again identified [Brown] as the shooter. [Brown] was apprehended and arrested for the crime by the Warrant Unit approximately two months later.

Trial Court Opinion, 1/25/12, at 2-3 (record citations and footnotes omitted).

On October 28, 2009, Brown was convicted by a jury of attempted murder,[1] aggravated assault,[2] possession of a firearm by a prohibited person,[3]

---

[1] 18 Pa.C.S §§ 902, 2502.

[2] 18 Pa.C.S. § 2702(a)(1).

[3] 18 Pa.C.S. § 6105(a)(1).

carrying a firearm without a license,[4] and possessing an instrument of crime.[5] On December 2, 2009, the trial court sentenced Brown to an aggregate sentence of 24-48 years' incarceration. Brown did not file post-trial motions or a direct appeal. On April 30, 2010, Brown filed a timely first PCRA petition alleging trial/sentencing counsel was ineffective for failing to file post-sentence motions or a direct appeal and seeking reinstatement of his appellate rights. Brown's direct appeal rights were reinstated. On appeal, our Court affirmed his judgment of sentence. *See Commonwealth v. Brown*, 3015 EDA 2011 (Pa. Super. filed Aug. 14, 2012).

On January 4, 2013, Brown filed another *pro se* PCRA petition; counsel was appointed to represent him. Despite being represented, Brown filed two additional amended PCRA petitions on June 20, 2014 and July 9, 2014. Counsel subsequently filed a *Finley*[6] "no-merit" letter stating there was no merit to Brown's claims and seeking withdrawal from the case. The court subsequently issued its Pa.R.Crim.P. 907 notice to dismiss Brown's petition without a hearing. Brown filed a *pro se* response to the Rule 907 notice, asserting five additional claims not raised in his original petition. In response, the court directed PCRA counsel to review these additional claims and either file an amended petition or amended *Finley* "no-merit" letter. Counsel

---

[4] 18 Pa.C.S. § 6106(a)(1).

[5] 18 Pa.C.S. § 907(a).

[6] *Commonwealth v. Finley*, 550 A.2d 213 (Pa. 1988).

complied with the court's directive and filed an amended *Finley* "no-merit" letter stating that he had reviewed Brown's additional claims and that they were meritless. On January 27, 2017, the court dismissed Brown's petition without a hearing. He filed a timely appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

On appeal, Brown presents the following issues for our review:

(1) W[ere] all counsel[] ineffective[7] for not arguing the ineffectiveness of John M. Belli, Esquire's ineffective assistance for failing to file a[n] Allocat[u]r [Petition] with[] the Pennsylvania Supreme Court on Appellant's one and only [d]irect [a]ppeal?

(2) W[ere] all counsel[] ineffective for not arguing the ineffectiveness of Trial Counsel for not objecting to improper Jury Charges of attempt[ed] murder and that the Commonwealth must prove by a pr[e]p[o]nderance of the evidence "to kill another human being with malice," when the Court charging the jury with attempt[ed] murder was defective, and in violation of Pennsylvania Suggested Standard Criminal Jury Instruction 12.901 A, which states malice must be proven in order to convict one of attempt murder?

(3) W[ere] all counsel[] ineffective for not arguing the ineffectiveness of trial counsel Mr. Ciancaglini for failure to object to trial [c]ourt's charge [that] it failed to concisely include the (3) three elements needed, where instead the word "elements" was used instead, [especially . . . where the charge is [a]ttempted [m]urder, the [c]ourt must

---

[7] With respect to claims of ineffective assistance of counsel, we begin with the presumption that counsel is effective. *Commonwealth v. Spotz*, 47 A.3d 63, 76 (Pa. 2012). To prevail on an ineffectiveness claim, a petitioner must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. *Id.* (citation omitted).

- 4 -

ensure the [j]ury is instructed that malice alone is not sufficient to sustain the charge?

(4)     W[ere] all counsel[] ineffective for not arguing that [t]rial [c]ounsel Mr. Ciancaglini [was] ineffective for not looking into the criminal history of Christopher [L]ancaster, and his girl firend [sic] Shakeya Green, who took the stand?

(5)     W[ere] all counsel[] ineffective for not arguing that trial attorney Mr. Ciancaglini [was] ineffective for allowing the Assistant District Attorney Caroline Keating, Esquire to int[r]oduce into evidence the Medical Examiner[′s] medical report who conducted the examination and who was not their [sic] at the trial to testify in violation of [Brown′s] Confrontation Clause of Federal Constitution Sixth Amendment?

(6)     W[ere] all counsel[] ineffective for not arguing trial [c]ounsel Mr. Ciancaglini[′s] ineffectiveness for not adopting a self-defense and/or duress/necessity defense?

(7)     W[ere] all counsel[] ineffective for not arguing that trial counsel, Mr. Ciancaglini[, was] ineffective for not hiring [Brown′s] own [e]xpert [m]edical [e]xaminer [or a private detective] to refute the Commonwealth′s [m]edical records[]?

(8)     Was Attorney Mosser′s **Finley** [l]etter proper when it did not list all the issues nor the Medical Examiner′s Confrontation[] Clause issue within his no-merit letter?

Appellant′s Brief, at 5.

In his first issue, Brown contends that all prior counsel were ineffective for not arguing that direct appeal counsel was ineffective for failing to file a petition for allowance of appeal (PAA) with the Pennsylvania Superior Court. Brown claims he was prejudiced by counsel′s omissions and that this Court should reinstate his right to appeal to the Supreme Court.

The Pennsylvania Supreme Court held that where counsel informs his client that he will file a PAA, but fails to do so in a timely fashion, a cognizable

claim of ineffectiveness exists. **Commonwealth v. Liebel**, 825 A.2d 630 (Pa. 2003). The Court further held that, in such an instance, a petitioner is not required to prove that the Pennsylvania Supreme Court would have granted the petition. **See Commonwealth v. Reed**, 971 A.2d 1216, 1225 (Pa. 2009) (counsel is *per se* ineffective for failing to file requested PAA); **Commonwealth v. Reaves**, 923 A.2d 1119, 1129 (Pa. 2007) (same).

Instantly, Brown does not allege that he either requested that counsel file a PAA[8] or that counsel told him that he would file a PAA and failed to do so. Thus, he is not entitled to relief on this claim. **Liebel**, **supra**; **Reed**, **supra**.

Brown next contends that prior counsel were ineffective for not arguing that trial counsel was ineffective for not objecting to improper jury charges. Specifically, Brown claims that the charge of attempted murder was defective where the charge did not include the requisite element of specific intent to commit the act, did not instruct that malice alone is not sufficient to sustain the charge, and where three elements should have been specifically enumerated.

We first note that "[a] trial court has wide discretion in phrasing jury instructions. When reviewing an allegation of an incorrect jury instruction, the appellate court must view the entire charge to determine whether the trial

---

[8] In fact, in PCRA counsel's **Finley** "no-merit" letter, counsel avers that Brown told him he chose *not* to pursue a PAA after conferring with prior counsel.

court clearly and accurately presented the concepts of the legal issue to the jury and should not reverse, as a result of the instruction, unless the trial court committed an abuse of its discretion." ***Commonwealth v. Ragan***, 743 A.2d 390, 397-98 (Pa. 1999). As an appellate court, "[w]e will not examine a phrase or sentence of an instruction in a vacuum. Rather, when we evaluate a challenge to a charge, it must consider how each part fits together to convey a complete legal principle." ***Commonwealth v. Geathers***, 847 A.2d 730, 733 (Pa. Super. 2004). Moreover, trial counsel will not be held to be ineffective for failing to object to an erroneous jury instruction unless the petitioner can establish prejudice. ***Commonwealth v. McGill***, 832 A.2d 1014 (Pa. 2003).

Instantly, a review of the notes of testimony from the jury charge demonstrates that the trial judge explained that Brown was being charged with attempted murder and that to find him guilty of that offense "you must find the following three elements have been proven beyond a reasonable doubt." N.T. Jury Trial, 10/28/09, at 117. The court then enumerated each of the three requisite elements of attempted murder: (1) commit certain act (shooting); (2) **specific intent to kill victim**; and (3) act constituted a substantial step toward commission of killing victim that defendant intended to bring about. ***Id.*** (emphasis added).

Here, the trial judge properly listed the three required elements to prove the crime of attempted murder, including that of specific intent to kill. ***See Commonwealth v. Anderson***, 650 A.2d 20 (Pa. 1994) (for defendant to be

found guilty of attempted murder, Commonwealth must prove specific intent to kill); *see also Geathers*, *supra* (court incorrectly instructed jury that malice, rather than specific intent, was sufficient to prove attempted murder).[9] Even though the court did not specifically state that malice alone is not sufficient to prove attempted murder, the charge, as a whole, conveyed the proper legal principle. *Geathers*, *supra*. Moreover, Brown has not proven how this alleged omission caused him prejudice. *McGill*, *supra*. Thus, no relief is due. *Ragan*, *supra*.

In his next issue on appeal, Brown asserts that prior counsel were ineffective for failing to object to trial counsel's failure to look into the criminal histories of trial witnesses, Christopher Lancaster and Shakeya Green. Moreover, Brown alleges that a *Brady*[10] violation occurred where the district attorney's office did not turn over Lancaster's and Green's criminal histories, which he claims are replete with "all things including assaults," after it was requested to do so.

In his brief, Brown generally asserts that this underlying legal issue has arguable merit, that counsel lacked an objective, reasonable basis for his actions, and that he was prejudiced on account of counsel's actions. Under

---

[9] Although his argument is mostly incomprehensible, Brown seems to imply that malice is a required element of attempted murder. This is simply not true. *See Geathers*, *supra*.

[10] *Brady v. Maryland*, 373 U.S. 83 (1963) (setting forth prosecution's obligation to disclose impeachment evidence as well as exculpatory evidence, as that evidence is evidence favorable to the accused).

such circumstances we will not consider such claim. ***See Commonwealth v. Begley***, 780 A.2d 605 (Pa. 2001) (assertions of ineffectiveness in vacuum cannot be ineffectiveness; to have court consider claims, party alleging ineffectiveness must set forth offer to prove at appropriate hearing sufficient facts upon which reviewing court can conclude that trial counsel may have, in fact, been ineffective).[11]

Brown next claims that all prior counsel were ineffective for not arguing that trial counsel was ineffective for not objecting to the assistant district attorney's introduction into evidence of the medical examiner's report because the examiner did not testify at trial, thus violating his rights under the Confrontation Clause.

In all criminal prosecutions, the accused shall enjoy "the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Confrontation Clause applies to witnesses against the accused, in other words -- those who bear testimony. In order for a testimonial document to be admissible, the witness who prepared it must testify at trial, unless he or she is unavailable and the defendant had a prior opportunity for cross-examination. ***Commonwealth v. Brown***, 139 A.3d 208 (Pa. Super. 2016).

Instantly, the district attorney did not admit the medical examiner's report as there was none prepared because the victim's injuries were not fatal.

---

[11] In any event, only *crimen falsi* crimes would have been admissible at trial as Brown did not assert justification or self-defense as defenses. The crime of assault is not considered a *crimen falsi* crime as it is not one that involves dishonesty or false statement. ***See*** Pa.R.E. 609.

However, the parties did stipulate at trial that some of the victim's medical records from Temple University Hospital, which detailed his injuries and medical treatment, could be read to the jury. These hospital records, however, were non-testimonial in nature. **Brown**, **supra** (document is testimonial if its primary purpose is created or given under circumstances which would lead objective witness reasonably to believe that document or statement would be available for use at later trial). Under such circumstances we do not find that counsel was ineffective or that Brown's rights under the Confrontation Clause were violated.

In his next issue, Brown contends that trial counsel was ineffective for failing to present the defenses of self-defense or duress. Here, the uncontradicted evidence at trial showed that Brown approached the unarmed victim, shot him in the back multiple times at point-blank range as the victim walked away, and continued to shoot the victim as he hid under his car, causing the victim to sustain a total of eight gunshot wounds.[12] Under such circumstances, we cannot fathom that the evidence would support a defense of either duress or self-defense. Thus, counsel cannot be deemed ineffective. **Spotz**, **supra**.

---

[12] Although Brown contends he is handicapped and has only one leg, he fails to show how this fact changes the irrefutable evidence that he provoked the incident and inflicted eight gunshot wounds upon his defenseless victim.

In his next issue, Brown contends that all prior counsel were ineffective for not raising trial counsel's ineffectiveness in failing to hire an expert or private investigator to refute the Commonwealth's medical evidence.

Again, both parties reasonably stipulated to the evidence from the victim's medical records from Temple Hospital, detailing the victim's injuries and treatment. Brown does not articulate how the failure to hire an expert or investigator to "refute" the records would have bolstered his defense and, in its absence, prejudiced him. Thus, we find this claim fails too.

Finally, Brown asserts that PCRA counsel was ineffective for failing to list all of Brown's issues in his *Finley* no-merit letter. Specifically, he claims that counsel omitted review of his Confrontation Clause/medical records issue. This claim is belied by the record.

In his *Finley* letter, dated December 12, 2016, PCRA counsel stated:

Next, Defendant alleges that trial counsel was ineffective for failing to object to the admission of the report of a medical examiner who did not conduct the examination because the admission of those records violated the Confrontation Clause, pursuant to *Crawford v Washington*, 541 U.S. 36 (2004), and its progeny. Because the victim in this case did not die, Defendant is presumably referring to a stipulation as to the records regarding the victim's medical treatment rather than an autopsy report. The rationale of *Crawford* is only applicable where the evidence in question is testimonial. *Commonwealth v. Allshouse*, 36 A.3d 163, 175-76 (Pa. 2012)[.] Statements are testimonial if the primary purpose of the statement is to establish past events for the purpose of a future criminal prosecution. *Michigan v. Bryant*, 131 S.Ct. 1143, 1154 (2011). Here, no report was admitted at all. Rather, the stipulation at issue merely recounted the victim's injuries and the treatment provided and did not draw any [conclusions] as to the cause of those injuries. That information was compiled for the purpose of providing medical

care, not in preparation for trial. Therefore, there was no [C]onfrontation [C]lause issue and counsel had no reason to object to the stipulation.

*Finley* No-Merit Letter by Todd M. Mosser, Esquire, 12/21/16, at 3. Because PCRA counsel properly reviewed Brown's Confrontation Clause claim and concluded that it lacked merit, we find no error on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/18