J-S65005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | | |
| v. | | |
| EDWARD SHEED, | | |
| Appellant | | No. 440 EDA 2014 |

Appeal from the Judgment of Sentence Entered September 10, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004550-2012

BEFORE:  BENDER, P.J.E., SHOGAN, J., and JENKINS, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED NOVEMBER 12, 2015**

Appellant, Edward Sheed, appeals from the judgment of sentence of an aggregate term of 30 to 62 years' incarceration, imposed after a jury convicted him of attempted murder, aggravated assault, possession of a firearm by a person prohibited, carrying a firearm without a license, and possessing an instrument of crime (PIC).  We affirm.

The trial court summarized the evidence presented at Appellant's trial, as follows:

> Complainant[,] Marvin Brown, testified that on June 10, 2011, at approximately 1:15 in the afternoon, he was playing dice on the 1400 block of Allison Street, when [Appellant] approached him and, pointing a gun at his head, reached into [Brown's] pants pocket and took [Brown's] cell phone.  When [Appellant] left, [] Brown followed[,] asking [Appellant] to return his phone.  After following [Appellant] a short distance, [] Brown, thinking better of his actions, stopped his pursuit, whereupon, [Appellant] pointed his gun at [] Brown and shot him multiple times, first in the stomach and then the back,

severing [Brown's] spinal cord, leaving him paralyzed from the neck down.

[] Brown testified that he had "hung out" with [Appellant] prior to the day of the shooting and had known him only by his nickname, "Doobie." He also testified that he [had] learned [Appellant's] name earlier [on the] day [of the shooting,] when he witnessed [Appellant] being stopped and questioned by police.[2]

_____

[2] Philadelphia Police Officer Chris Kopecki testified that on June 10, 2011, he was assigned to the Philadelphia Police Department's 12th District Narcotics Division. At approximately 10:50 a.m., he was in plainclothes and an unmarked vehicle with his partner, when he stopped [Appellant], in the vicinity of 1400 South Allison Street, and verified his identity.

_____

At trial, [] Brown unequivocally identified [Appellant] as [the] person who took his phone and shot him. [Brown] also testified that after waking up in the hospital he told his father that [Appellant] was the shooter. In addition, [Brown] testified that on June 21, 2011, eleven days after the shooting, he gave a statement to the investigating detective in which he identified [Appellant] as the shooter from a photo array shown to him.

Philadelphia Police Detective Matthew Farley testified that on June 10, 2011, he was assigned to the Southwest Detectives Division of the Philadelphia Police Department located at 55th and Pine Streets in the City of Philadelphia, when at approximately 1:15 p.m. he was assigned as the lead investigator to investigate the shooting of [] Brown. He further testified that within two hours of the shooting he had developed [Appellant] as a suspect by tracing back the 9-1-1 calls reporting the incident and talking to the callers himself.

Using this information, he prepared a photo array of eight pictures, including [Appellant's], on a single sheet[,] as well as individual pictures of each of the individuals included in the photo array. Detective Farley testified that he first interviewed [] Brown on June 21, 2011, at which time he took [Brown's] statement and displayed a photo array containing [Appellant's]

- 2 -

picture. [Detective Farley] further testified that, upon being shown the phot array, [] Brown immediately and without hesitation identified [Appellant] as the shooter.

Trial Court Opinion (TCO), 10/1/14, at 4-5 (citations to the record omitted).

Based on this evidence, the jury convicted Appellant of the above-stated offenses on July 10, 2013. On September 10, 2013, Appellant was sentenced to a term of 20 to 40 years' incarceration for his attempted murder conviction, 5 to 10 years' imprisonment for his offense of possession of a firearm by a person prohibited, 3 to 7 years' imprisonment for carrying a firearm without a license, and 2 to 5 years' incarceration for his PIC conviction. The court imposed each sentence to run consecutively, totaling an aggregate term of 30 to 62 years' incarceration. Appellant filed a timely post-sentence motion, which was denied on February 7, 2014. Appellant filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant presents the following issues for our review:

A. The guilty verdicts in this matter were against the weight of the evidence because:

[a]. the complaining witnesses [*sic*] trial testimony was grossly inconsistent with his prior testimony and statements; and,

[b]. the 911 calls played at trial provided a description of the shooter that did not match [Appellant].

B. The trial court erred by allowing a detective to testify to impermissible hearsay regarding what the complainant said and why he ever said it.

- 3 -

C. The trial court erred by instructing the jury that it's [*sic*] assessment of the performance of the Philadelphia Police Department's work in this matter was irrelevant.

D. The trial court erred by denying the jury's request to review medical records which were previously admitted into evidence by way of stipulation.

E. The trial court erred by denying the jury's request to review the notes of testimony from the preliminary hearing.

F. The trial court's sentence of 2[] to 5 years['] incarceration for the PIC conviction was an abuse of discretion and manifestly unreasonable as the trial court sentenced [Appellant] outside the guideline range without articulating sufficient reasons on the record[.]

G. The trial court's aggregate sentence of 30 to 62 years['] incarceration which included a determination that each individual sentence is to be served consecutively was an abuse of discretion and manifestly unreasonable because:

> a. The trial court did not give adequate weight to [Appellant's] current family support and past detrimental upbringing, and
>
> b. The trial court impermissibly double counted both the seriousness of the injury suffered by the complainant and [Appellant's] prior criminal history.

Appellant's Brief at 7 (unnecessary capitalization omitted).

In Appellant's first issue, he argues that the jury's verdict was against the weight of the evidence.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has

been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-1136 (Pa. 2011) (citations and internal quotation marks omitted).

Appellant contends that the jury's verdict was contrary to the weight of the evidence because Brown made contradictory statements that called into question his credibility. Appellant specifically avers:

Brown testified at trial that he knew [Appellant] well before the shooting. In fact, he told his father that day in the hospital that "Edward Sheed" had shot him. Yet, Brown painted a much different picture when he testified at his preliminary hearing. At the preliminary hearing he told the judge that he did not know [Appellant's] real name. Further, the stipulated medical records indicated that Brown had no independent medical recollection of the events pertaining to the shooting. This boldfaced contradiction – knowing [Appellant's] name and the events [versus] not knowing his name or the events of the shooting – are so juxtaposed that they clearly indicate a lack of truth. Thus, no verdict of guilt should have been based upon it.

Appellant's Brief at 12.[1]

In rejecting Appellant's challenge to the weight of the evidence, the trial court emphasized that,"the question of a witness's credibility is reserved exclusively for the jury." TCO at 11 (citing ***Commonwealth v. Alicia***, 92

_____

[1] In Appellant's statement of the issues, he also challenges the weight of the evidence on the basis that "the 911 calls played at trial provided a description of the shooter that did not match [Appellant]." Appellant's Brief at 7 (unnecessary capitalization omitted). However, Appellant abandons this claim in the argument portion of his brief. Accordingly, we will not address it herein.

A.3d 753, 761 (Pa. 2014) ("[T]he veracity of a particular witness is a question which must be answered in reliance on the ordinary experiences of life, common knowledge of the natural tendencies of human nature, and observations of the character and demeanor of the witness. As the phenomenon of lying is within the ordinary capacity of jurors to assess, the question of a witness's credibility is reserved exclusively for the jury.") (citation omitted)). The court also stressed that at trial, Brown identified Appellant as the person who shot him, and stated "that prior to the shooting he had known [Appellant] from the neighborhood by [Appellant's] nickname, 'Doobie.'" TCO at 10. Brown also testified that he learned Appellant's 'real' name shortly before the shooting, and that while in the hospital, he had told his father that Appellant had shot him. *Id.* at 10-11. The jury was also informed at trial that Brown had identified Appellant from a photo array "immediately and without hesitation…." *Id.* at 11.

In regard to Brown's purportedly inconsistent statements to medical personnel that he did not know who shot him, the trial court pointed out that Brown testified at trial that he did not tell medical staff that Appellant had shot him "[b]ecause it was not any of their concern." *Id.* (citing N.T. Trial, 7/9/13, at 34). Additionally, the record confirms that defense counsel cross-examined Brown with his preliminary hearing testimony in which he stated that he did not know Appellant's 'real' name. N.T. Trial, 7/9/13, at 40-45. Therefore, the jury was aware of the inconsistency between Brown's trial testimony and his preliminary hearing testimony. We agree with the trial

court that it was within the province of the jury to weigh these discrepancies and determine which, if any, portions of Brown's testimony to believe. In light of the role of the jury in this regard, the trial court did not consider the verdict as shocking to "one's sense of justice…." TCO at 12. Appellant's argument on appeal has not convinced us that the trial court abused its discretion in reaching this decision. Accordingly, his challenge to the weight of the evidence is meritless.

In Appellant's second issue, he argues that the trial court erred by admitting hearsay testimony. We begin by noting that, "[q]uestions regarding the admissibility of evidence rest within the trial judge's discretion, and an appellate court will reverse the judge's decision only for an abuse of discretion." *Commonwealth v. Vandivner*, 962 A.2d 1170, 1179 (Pa. 2009) (citations omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Gray*, 867 A.2d 560, 570 (Pa. Super. 2005).

Initially, Appellant's vague argument inhibits our meaningful review of his claim. Specifically, Appellant does not identify *what* testimony was improperly admitted, or even name the witness that proffered the ostensibly inadmissible hearsay testimony. Instead, Appellant ambiguously refers only to "the statement" by Brown, testified to by "the Detective." *See* Appellant's Brief at 13 (emphasis added). At no point does Appellant quote

Brown's statement, directly name the witness who testified to it, or cite to where in the record that testimony occurred. Thus, Appellant has waived this claim by not sufficiently developing it for our meaningful review. **See** **In re R.D.**, 44 A.3d 657, 674 (Pa. Super. 2012) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").[2]

In any event, we would conclude that Appellant's claim is meritless, even had he properly developed it for our review. Our examination of the trial court's opinion and the Commonwealth's brief indicates that Appellant is referring to testimony by Detective Farley, wherein the detective described comments Brown made when he was interviewed at the hospital by the prosecutor and Detective Farley. **See** TCO at 13; Commonwealth's Brief at

---

[2] We note that the trial court also found this issue waived based on the vague manner in which Appellant asserted it in his Rule 1925(b) statement. TCO at 12. The court emphasized that in his Rule 1925(b) statement, Appellant "not only failed to identify [to] which detective he is referring…, [but] he has also failed to specify to which testimony he is referring." **Id.** at 12. We agree with the trial court that Appellant waived his claim on this basis, as well. **See Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001) (finding issue waived where the appellant's concise statement "was too vague for the trial court to identify and address the issue to be raised on appeal.").

16. Specifically, the detective testified that during the interview, Brown asked the prosecutor "to keep [her] voice down" and said that "[h]e didn't want anybody outside to hear what [they] were talking about." N.T. trial, 7/9/13, at 89. The trial court concluded that this testimony "was admissible as it clearly falls outside the hearsay exclusionary rule as a 'verbal act.'" TCO at 13. For its part, the Commonwealth argues that Brown's statements were not hearsay because they were "not offered for the truth of the matter asserted." Commonwealth's Brief at 14. Alternatively, both the trial court and the Commonwealth maintain that even if Brown's statement was hearsay, the improper admission thereof was harmless error. For the following reasons, we agree with the court's and the Commonwealth's harmless error assessment; accordingly, we need not decide whether Brown's two statements constituted hearsay.

At trial, Appellant attempted to impeach Brown's identification of him as the shooter by emphasizing that Brown had told medical personnel that he did not know who shot him. In response, the Commonwealth offered evidence demonstrating that Brown lied to medical personnel about not knowing the shooter's identity because Brown did not believe the medical staff needed to know that information. For instance, Brown testified that he did not tell the medical staff what happened "[b]ecause it was not any of their concern." N.T. Trial, 7/9/13, at 34. Brown also testified that when the prosecutor and Detective Farley came to interview him, he asked the nurses and doctors to "step out." *Id.* at 35. Thus, through Brown's own testimony,

the jury was informed that Brown did not want the medical staff to know the details of the shooting. Consequently, Brown's hearsay statements asking the prosecutor to keep her voice down, and his comment that he did not want anyone outside the hospital room to hear his interview with the prosecutor and Detective Farley, were merely cumulative evidence demonstrating Brown's desire to keep the details of the shooting private from the medical staff. Accordingly, even if the trial court improperly allowed Detective Farley to testify regarding Brown's hearsay statements, we would conclude that that error was harmless.

Next, Appellant challenges the trial court's jury instruction. In **Commonwealth v. Ragan**, 743 A.2d 390 (Pa. 1999), our Supreme Court explained that, "[a] trial court has wide discretion in phrasing jury instructions." **Id.** at 397.

> When reviewing an allegation of an incorrect jury instruction, the appellate court must view the entire charge to determine whether the trial court clearly and accurately presented the concepts of the legal issue to the jury and should not reverse, as a result of the instruction, unless the trial court committed an abuse of its discretion. We will not examine a phrase or sentence of an instruction in a vacuum. Rather, when we evaluate a challenge to a charge, we must consider how each part fits together to convey a complete legal principle.

**Id.** (citations omitted).

Initially, we note that Appellant fails to cite to the portion of the record containing the at-issue jury charge. **See** Appellant's Brief at 14. However, he does quote the challenged instruction, wherein the court instructed the

- 10 -

jury that, "a trial is not an evaluation of the Police Department." ***Id.***

Appellant contends that this remark by the court

> was clearly prejudicial and likely influenced the jury to disregard any mistakes made by the police during the investigation of this case. If the statement had not been made, then the jury would have likely held the police to a much higher standard. The message to the jury was essentially telling them to give the police a free pass and not to factor into their verdict any mistakes that could have given way to reasonable doubt and a verdict of not guilty.

***Id.***

Notably, Appellant does not discuss what purported 'mistakes' the police department made in this case that the jury disregarded because of the court's contested instruction. That omission aside, Appellant's challenge to the court's instruction fails, as he essentially asks us to evaluate the court's single comment in a vacuum, contrary to our Supreme Court's mandate in ***Ragan***. Namely, Appellant disregards the court's instruction before and after the at-issue remark, which entailed the following:

> [The Court:] [A trial] is not a competition between lawyers. It doesn't matter which lawyer did the better job. That's not the issue before you. …
>
> Likewise, **a trial is not an evaluation of the Police Department**. At the end of the trial when you go back to deliberate, if you conclude that the Police Department did an A plus job, could not have done a better job, as good as anything you've ever seen on TV, as good as anything any fiction writer ever imagined, but the Commonwealth has not proven the defendant guilty beyond a reasonable doubt, your verdict has to be not guilty.

***

Likewise, if at the end of your deliberations you're thinking to yourself, geez, the Police Department could have done a lot better in this case, I wouldn't even give them a passing grade, but you're convinced by all the evidence, the testimony of the witnesses or whatever other evidence was introduced at trial, you're convinced beyond a reasonable doubt that the defendant is guilty, then your verdict must be guilty, because that's what a trial is about. A trial is about not the lawyers, not the police, not the opinions of the lawyers, not the opinions of the Judge. A trial is about whether the Commonwealth has proven the defendant guilty beyond a reasonable doubt.

N.T. Trial, 7/10/13, at 9-10 (emphasis added).

Examining this instruction as a whole, rather than focusing solely on the emphasized comment (as does Appellant), we ascertain no abuse of discretion by the court. The court explained that the jury's verdict should not be premised on *any* evaluation of how well, or poorly, the police had conducted their investigation. The court directed that, instead, the jury must focus on whether the Commonwealth's evidence proved Appellant guilty beyond a reasonable doubt. Appellant's scant challenge to the court's instruction (reproduced in its entirety, above) does not convince us that the court's comments were legally incorrect and/or an abuse of the court's discretion. Consequently, Appellant's third issue does not warrant relief.

Appellant's fourth and fifth issues are related and, thus, we will address them together. Appellant maintains that the trial court erred by denying the jury's request to view, during their deliberations, Brown's medical records and the transcript of his testimony from Appellant's preliminary hearing.

"Whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge." *Commonwealth v. Barnett*, 50 A.3d 176, 194 (Pa. Super. 2012). Here, the court explained why it denied the jury's request to see Brown's medical records, and the transcripts of his testimony at the preliminary hearing, as follows:

> The court denied these requests because [] Brown's medical condition was not at issue. The records were voluminous and only one entry was introduced for the purpose of impeaching [] Brown's testimony[,] and the requested notes [of testimony from the preliminary hearing] contained testimony not in evidence at trial.

TCO at 16.

In asserting that the trial court abused its discretion in reaching this decision, Appellant provides the following argument, in its entirety:

> The jury requested the medical records during their deliberation. It can be assumed that the records were important to some members of the jury as they attempted to reach their decision. Failure to provide these records to the jury resulted in an unfair prejudice to [Appellant]. The trial court assumes in its opinion that there was no prejudice because the medical condition of Brown was not in question and there was only a short submission in the report which contradicted the testimony previously provided by Brown. This was not for the trial court to assume and there is no justifiable reason why the medical records should not have been provided.
>
> …
>
> [Appellant's] argument [regarding the jury's request for Brown's preliminary hearing testimony] is similar to the argument above concerning medical records. For the sake of judicial economy, [Appellant] would repeat the arguments made above. Specifically, that the jury deemed that the notes of testimony from the preliminary hearing were relevant and

therefore the notes of testimony should have been provided to the jury upon their request. The failure to do so by the trial court was unfairly prejudicial and did not provide [Appellant] a fair [trial].

Appellant's Brief at 14-15.

Appellant seems to suggest that simply because the jury requested these documents, the court should have permitted the jury to have them. This argument is unconvincing, as it disregards the trial court's *discretion to decide* whether to permit jurors to view exhibits during deliberations. ***Barnett***, 50 A.3d at 194. Here, the court exercised that discretion, concluding that it was inappropriate to allow the jury to view Brown's entire medical records, and the transcript of his preliminary hearing testimony, where those exhibits were voluminous and contained material that was not discussed at trial, and/or pertinent to Appellant's guilt. Appellant has not convinced us that the court's decision was "manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Gray***, 867 A.2d at 570. Accordingly, Appellant's fourth and fifth issues are meritless.

In Appellant's final two issues, he challenges discretionary aspects of his sentence. We will address his arguments together. To begin, we note:

A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute. When challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the inappropriateness of the sentence. Two requirements must be met before we will review this challenge on its merits. First, an appellant must set forth in his brief a concise statement of the reasons relied upon

- 14 -

for allowance of appeal with respect to the discretionary aspects of a sentence. Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. That is, [that] the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. We examine an appellant's [Pa.R.A.P.] 2119(f) statement to determine whether a substantial question exists. Our inquiry must focus on the *reasons* for which the appeal is sought, in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the merits.

***Commonwealth v. Ahmad***, 961 A.2d 884, 886-887 (Pa. Super. 2008)

(emphasis in original; citations, quotation marks, and footnote omitted).

Here, Appellant includes a Rule 2119(f) statement in which he,

argues that the trial court imposed an excessive sentence where it gave no meaningful consideration to the Guidelines, but merely sentenced [] [A]ppellant to essentially the statutory maximum on each count. The sheer magnitude of the trial court's deviation from the Sentencing Guidelines presents a substantial question of excessiveness that should warrant this Court's review.

Appellant's Brief at 16.

Even if we accepted the claims set forth in Appellant's Rule 2119(f) statement as presenting substantial questions for our review, he essentially abandons those assertions in his argument section, instead presenting substantially different claims. For instance, Appellant contends that the court erred by sentencing him to 2 to 5 years' imprisonment for his PIC offense because the court *failed to state reasons on the record* for going "above and beyond the recommended guideline sentence." Appellant's Brief at 17. This specific assertion was not mentioned in Appellant's Rule 2119(f)

- 15 -

statement. Likewise, Appellant's argument that his "sentence was manifestly unreasonable because the trial court did not give weight to his current family structure and his past detrimental upbringing" was also not set forth, nor even suggested, in Appellant's Rule 2119(f) statement. ***Id.*** Because Appellant failed to raise either of these challenges to the discretionary aspects of his sentence in his Rule 2119(f) statement, he has not demonstrated that either claim presents a substantial question warranting our review. Additionally, the claims set forth in Appellant's Rule 2119(f) statement are waived, based on his failure to meaningfully develop them for our review.

Nevertheless, even had Appellant satisfied the requirements for review of his discretionary aspects of sentencing claims, we would conclude that he is not entitled to relief. First, Appellant has not convinced us that the trial court's deviation from the Sentencing Guidelines for his PIC conviction was unreasonable or an abuse of the court's discretion. ***See*** 42 Pa.C.S. § 9781(c)(3) (directing that the appellate court shall vacate a sentence if "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable"); ***Commonwealth v. Gould***, 912 A.2d 869, 872 (Pa. Super. 2006) ("Our standard of review when an appellant challenges the discretionary aspects of his … sentence is very narrow; the Court will reverse only where [the] appellant has demonstrated a manifest abuse of discretion by the sentencing judge."). We are cognizant that,

> [w]hen a sentencing court makes the decision to deviate from the sentencing guidelines, "it is especially important that the court consider all factors relevant to the determination of a proper sentence." ***Commonwealth v. Ruffo***, 360 Pa. Super. 180, 520 A.2d 43, 47 (1987). This means that a sentencing court must give consideration not only to the nature of the crime, but also to the individual character and circumstances of the offender. ***See***[] 42 Pa.C.S. § 9721(b).

***Commonwealth v. Eby***, 784 A.2d 204, 207-208 (Pa. Super. 2001). Additionally, "[c]ourts must apply the guidelines unless the circumstances of the individual case require deviation, and in that situation where deviation is required the court must articulate sufficient reasons to justify this conclusion." ***Id.*** at 209.

Here, the trial court was informed at the sentencing proceeding of the applicable guidelines ranges for each of Appellant's offenses, including PIC. N.T. Sentencing, 9/10/13, at 16-18. In its opinion, the trial court also emphasizes that,

> [b]ecause of the violent nature of [Appellant's] acts, the [c]ourt ordered a pre-sentence investigation report (PSI) be prepared prior to sentencing. The PSI, prepared on September 9, 2013, reveal[ed] that [Appellant was] 22 years old with a juvenile record of four arrests, including three in Texas. [Appellant] also [had] three arrests as an adult, resulting in two convictions, including the current matter. The report also note[d] that [Appellant] refused to cooperate and that "he does not appear to be a good candidate for community supervision."

TCO at 20 (citations to the record omitted). At the sentencing proceeding, the court stated that it considered the PSI, "listened to the arguments of counsel, the evidence that was presented, as well as [Appellant's] presentation." N.T. Sentencing, 9/10/13, at 33. Notably, the

- 17 -

Commonwealth stressed to the court that, in light of Appellant's criminal record and the severity of his instant offenses, he posed a danger to the community. *Id.* at 18-23. The Commonwealth also emphasized that Appellant exhibited a complete lack of remorse for his present offenses. *Id.* at 19, 24.

Prior to imposing its sentence, the court stated:

[The Court:] The offense gravity score in this case is high because the crime is serious, but even this offense gravity score understates the seriousness of this offense because of the horrible injuries suffered by the victim.

There are so many different ways to commit aggravated assault. And serious bodily injury is a definition that includes so many different kinds of injuries, but the injury that we saw in this courtroom was just horrific, and the jury found that it was caused by [Appellant].

So on count one, charge of attempted murder, I impose the maximum sentence, which is 20 to 40 years in a state correctional institution.

Count three is possession of a firearm by a prohibited person, and that law exists because the idea is that certain people by their conduct have demonstrated that they should not have a firearm. And based on what I heard, [Appellant's] adult and juvenile record, there's no question that he should never be anywhere near a firearm. And on that count, I impose the maximum sentence of five to ten years in a state correctional institution.

Count four is also a firearm violation, carrying a concealed weapon. I impose a sentence of three to seven years. And [PIC], a sentence of two to five years.

All of those sentences run consecutive for a total of 30 to 60 years in a state correctional institution.

*Id.* at 33-34.

- 18 -

We concede that the court did not provide a lengthy statement of its reasons for fashioning Appellant's sentence. However, "a lengthy discourse on the trial court's sentencing philosophy is not required." **Commonwealth v. Malovich**, 903 A.2d 1247, 1253 (Pa. Super. 2006) (citation omitted). "Rather, the record as a whole must reflect the court's reasons and its meaningful consideration of the facts of the crime and the character of the offender." **Id.** (citation omitted).

Here, the record evinces that the court considered the PSI, as well as arguments and information presented by Appellant and the Commonwealth regarding Appellant's prior criminal history, lack of remorse, the danger he poses to the community, the circumstances of his upbringing, and his individual characteristics. Moreover, the court's opinion bolsters our interpretation of the record. There, the trial court stated:

> In fashioning [Appellant's] sentence, the [c]ourt agreed with the Commonwealth's assessment that [Appellant] demonstrated a "complete lack of remorse" and has failed "to take responsibility for anything that has happened in his life…." The [c]ourt also agreed with the PSI assessment that [Appellant] is not a good candidate for rehabilitation.
>
> ***
>
> [Appellant's] … complaint that the [c]ourt failed to articulate "sufficient reasons" for imposing its sentence on the charge of [PIC] misstates the record. The nature of [Appellant's] unprovoked shooting of [] Brown makes it abundantly clear that [Appellant] poses a real threat to the community, has a callous disregard for human life and should be forever barred from ever having a gun in his possession.
>
> ***

Likewise, [Appellant] … states that in sentencing [him], the [c]ourt failed to take into account current family support and his detrimental upbringing[, which] also misstates the record. Other than argument by counsel, [Appellant] presented no evidence relating to his current family support. His fiancé denied he was involved in the shooting. Furthermore, the salutary effect of any such evidence would have been negated by [Appellant's] lack of remorse and failure to accept responsibility for his acts.

TCO at 21-22.

The record of the sentencing proceeding, the statements by the court prior to imposing Appellant's sentence, and the rationale offered by the court in its opinion demonstrate that Appellant's term of incarceration for each conviction, and his aggregate sentence, is not unreasonable or a manifest abuse of the trial court's discretion. Accordingly, even had Appellant properly presented his discretionary aspects of sentencing claims in his Rule 2119(f) statement, and convinced us that they present substantial questions for our review, we would deem them meritless.

In sum, all of Appellant's issues are either waived and/or meritless. Accordingly, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2015