**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| HOUDINI MASOYAMA SAUNDERS | : | |
| | : | |
| Appellant | : | No. 290 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 1, 2019
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0001602-2015

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:          **FILED: FEBRUARY 4, 2022**

Appellant, Houdini Masoyama Saunders, appeals *nunc pro tunc* from the judgment of sentence entered in the Dauphin County Court of Common Pleas, following his jury trial convictions for possession of a controlled substance with intent to deliver ("PWID") and possession of drug paraphernalia.[1] We remand this case to the trial court for further findings of fact regarding whether dismissal of the charges was warranted under Pa.R.Crim.P. 600.

The relevant facts and procedural history of this appeal are as follows.

> On July 16, 2014, members of the Dauphin County Drug Task Force conducted a buy/walk operation in Susquehanna Township. A buy/walk operation is one in which the intent is to purchase controlled substances from an individual but then to allow them to leave without being arrested so that the investigation may continue.

---

[1] 35 P.S. § 780-113(a)(30), (32).

In the presence of the task force officers, a confidential informant ("CI") placed a telephone call to an individual named Sara and arranged to purchase a brick of heroin. The exchange was to occur at the Union Square Shopping Center. Before going to the arranged location, the officers conducted a thorough search of the CI at a secure location to assure that he or she did not have any drugs on their person. Nothing was discovered. From that point forward, the CI was either in the custody of the officers or under their constant surveillance. The CI drove to the meeting location in a vehicle with Sergeant Ashley Baluh, whose job was to act in an undercover capacity as the CI's friend.

Twenty-two (22) minutes after placing the phone call, a black Dodge arrived at the shopping center. The vehicle had Florida license plates and appeared to be a rental car. Officer Clee Tilman, a police officer for thirteen (13) years who was overseeing the operation, testified that his training and experience have taught him that drug dealers often utilize rental cars to conduct their deals. A black male was the sole occupant of the Dodge, and the vehicle parked "directly near" where the CI and Sergeant Baluh were parked. The CI exited Sergeant Baluh's vehicle and entered the passenger side of the Dodge. The Dodge drove a loop around the parking lot and then returned to the area near where it was originally parked. The CI then returned to Sergeant Baluh's vehicle and turned over forty-two (42) bags of heroin. Only three (3) minutes had passed since the time the Dodge arrived. The Dodge then exited the shopping center.

With Officer Tilman and Detective Gary Flythe following in separate vehicles, Officer Ryan Lindsley was directed to execute a traffic stop of the Dodge to identify the occupant. Officer Lindsley pulled the Dodge over approximately one and one-half (1½) miles from the shopping center. Once the CI exited the Dodge, no one else entered or exited the vehicle until the traffic stop. Officer Lindsley requested the driver provide identification and he ultimately issued him a written warning. He was able to identify the driver as [Appellant].

(Trial Court Opinion, filed April 5, 2021, at 3-4) (internal record citations

omitted).

The Commonwealth filed a criminal complaint on October 29, 2014, and Appellant proceeded to a preliminary hearing on March 12, 2015. Following the preliminary hearing, the court granted Appellant's release on unsecured bail. The court also scheduled Appellant's formal arraignment for May 11, 2015. On March 16, 2015, Appellant was transported to state prison for a state parole detainer. Consequently, Appellant did not appear at his formal arraignment, and the court issued a bench warrant.

On August 17, 2016, Appellant was arrested and detained on the bench warrant. The court also scheduled Appellant's next listing for September 14, 2016. Appellant posted bail on August 22, 2016 and subsequently filed *pro se* motions to dismiss the charges pursuant to Rule 600 on September 9, 2016 and September 15, 2016.[2] The court conducted a Rule 600 hearing on October 7, 2016, but Appellant did not appear. At the conclusion of the hearing, the court dismissed the *pro se* motions and indicated that the next listing was scheduled for November 16, 2016. (*See* N.T. First Rule 600 Hearing, 10/7/16, at 3).

On November 17, 2016, the Public Defender's office filed a motion for continuance on Appellant's behalf. The court granted Appellant's motion and

---

[2] At the time he filed the *pro se* motions, Appellant had a pending application with the Public Defender's office. (*See* N.T. First Rule 600 Hearing, 10/7/16, at 2).

continued the matter until February 2, 2017.  On February 2, 2017, Appellant requested another continuance.  The court granted Appellant's request and continued the matter until March 1, 2017.

Thereafter, the record reveals that Appellant's case was rescheduled on multiple occasions between March 1, 2017 and January 3, 2018.[3]  The rescheduling notice filed on January 3, 2018 listed the matter for March 7, 2018.  Prior to that listing, Appellant filed a counseled Rule 600 motion on February 5, 2018.  In it, Appellant argued that over one thousand days had elapsed since the filing of the criminal complaint, and much of the delay was directly attributable to the Commonwealth.  Appellant emphasized the period where he was in state prison for the parole detainer, claiming "even a minimal exercise of due diligence on the part of the Commonwealth would have revealed [Appellant's] location."  (Rule 600 Motion, filed 2/5/18, at ¶8).

The court conducted a Rule 600 hearing on March 26, 2018.  At the start of the hearing, the Commonwealth immediately shifted the court's focus to one discrete period of delay: "Really, what's at issue here are 519 days in which [Appellant] was in the custody of the Department of Corrections.  That's from March 16th of 2015 through August 16th of 2016."  (N.T. Second Rule 600 Hearing, 3/26/18, at 2).  Relying on **Commonwealth v. Baird**, 601 Pa.

---

[3] The rescheduling notices contained in the record on appeal do not provide an explanation regarding what prompted these delays.  The docket entries, however, indicated that Appellant was "not ready" on two occasions: August 2, 2017 and September 29, 2017.

625, 975 A.2d 1113 (2009) and **Commonwealth v. Wright**, 178 A.3d 884 (Pa.Super. 2018), the Commonwealth argued that the period at issue amounted to excludable delay. Other than the period where Appellant was in state custody, the parties did not address any of the other delays that occurred prior to the filing of the Rule 600 motion. On July 3, 2018, the court denied Appellant's Rule 600 motion.

Following trial, a jury convicted Appellant of PWID and possession of drug paraphernalia. On February 1, 2019, the court sentenced Appellant to an aggregate term of two (2) to six (6) years' imprisonment. Appellant timely filed a notice of appeal, which this Court dismissed on January 2, 2020 due to Appellant's failure to file a brief.

On August 31, 2020, Appellant timely filed a *pro se* petition pursuant to the Post Conviction Relief Act, at 42 Pa.C.S.A. §§ 9541-9546. The court appointed counsel, who filed an amended petition on December 17, 2020. On February 2, 2021, the court reinstated Appellant's post-sentence and direct appeal rights *nunc pro tunc*. Appellant timely filed a post-sentence motion *nunc pro tunc* on February 12, 2021, challenging the weight of the evidence supporting his convictions. On March 2, 2021, the court denied Appellant's post-sentence motion *nunc pro tunc*.

Appellant timely filed a notice of appeal *nunc pro tunc* on March 3, 2021. On March 9, 2021, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed

his Rule 1925(b) statement on March 30, 2021.

Appellant now raises four issues for our review, which we have reordered as follows:

> Whether the trial court did not properly address trial counsel's objection to the proposed jury instructions regarding burden of proof[?]
>
> Whether the evidence presented by the Commonwealth at trial was not sufficient to prove Appellant delivered a controlled substance?
>
> Whether the trial court erred when denying Appellant's motion for a new trial based on the weight of the evidence?
>
> Whether the trial court abused its discretion when it denied Appellant's motion to dismiss the criminal docket pursuant to Pa.R.Crim.P. 600?

(Appellant's Brief at 8).

In his first issue, Appellant asserts that trial counsel objected to the court's jury instruction regarding the Commonwealth's burden of proof. Following the objection, Appellant complains that the court did not clarify its instruction or issue a curative instruction based upon counsel's objection. Appellant further argues that the trial transcripts "do not reflect that this objection was addressed by the trial court with the jury…." (**Id.** at 14). Appellant concludes that he is entitled to a new trial due to the court's failure to address the objection with the jury. We disagree.

"The trial court has considerable discretion in fashioning a jury charge." **Commonwealth v. Gomez**, 224 A.3d 1095, 1102 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 236 A.3d 1053 (2020). "The court is free to use its own

expressions, provided it clearly and accurately conveys the applicable legal concepts at issue." *Id.* "In reviewing instructions to a jury, we consider the entire charge, 'not merely discrete portions thereof.'" *Id.* (quoting *Commonwealth v. Johnson*, 630 Pa. 493, 552, 107 A.3d 52, 88-89 (2014)). "The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal.'" *Commonwealth v. Scott*, 73 A.3d 599, 602 (Pa.Super. 2013) (quoting *Commonwealth v. Brown*, 911 A.2d 576, 583 (Pa.Super. 2006)).

Our Supreme Court has addressed "burden of proof" and "reasonable doubt" instructions as follows:

> Without impinging on the discretion of the trial courts to phrase their own instructions, we have acknowledged charges in other cases that would clearly enable a jury to determine whether the Commonwealth has met its burden of proof.
>
> It is true that this Court has never required a single standard charge on reasonable doubt. However, we also have never stated that a jury may be given a reasonable doubt charge that fails to define reasonable doubt.
>
> Moreover, we have repeatedly placed our imprimatur on the charge expressed in *Commonwealth v. Donough*, 377 Pa. 46, 51-52, 103 A.2d 694, 697 (1954).
>
> > "A standard and approved form of charge on this point would be: 'The defendant comes before you presumed to be innocent and the burden is upon the Commonwealth to prove his guilt beyond a reasonable doubt. A reasonable doubt cannot be a doubt fancied or conjured up in the minds of the jury to escape an unpleasant verdict; it must be an honest doubt arising

- 7 -

out of the evidence itself, the kind of doubt that would restrain a reasonable man (or woman) from acting in a matter of importance to himself (or herself).'"

***Commonwealth v. Ragan***, 560 Pa. 106, 128-29, 743 A.2d 390, 402 (1999).

Instantly, the relevant portion of the court's jury instruction provided:

A person accused of a crime is not required to present evidence or prove anything in their own defense. If the Commonwealth's evidence fails to prove that the defendant is guilty beyond a reasonable doubt, your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that the defendant is guilty, well then, your verdict should be guilty.

Although the Commonwealth has the burden of proving that the defendant is guilty, this does not mean that the Commonwealth must prove its case beyond all doubt or to a mathematical certainty nor must it demonstrate the complete impossibility of innocence.

A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in their own affairs. A reasonable doubt must fairly arise out of the evidence presented with respect to some element of the crime.

A reasonable doubt must be a real doubt. It may not be an imagined one nor may it be a doubt that was manufactured to avoid carrying out an unpleasant duty. It must be an honest doubt arising out of the evidence itself, the kind of doubt that would restrain a reasonable person from acting in a manner of importance to themselves.

(N.T. Trial, 1/15-16/19, at 95-96).

The court completed its charge, and the jury exited the courtroom to commence deliberations. At that point, trial counsel raised the following objection:

Yes, Your Honor, just on the presumption of innocence,

- 8 -

burden of proof, reasonable doubt instruction, on the standard instructions actually submitted by [the Commonwealth], I was taking exception to the lack of the phrase "a reasonable doubt must fairly arise out of the evidence that was presented" and this part was omitted "or out of the lack of evidence presented" and it goes on from there. But just that portion of the phrase there.

(*Id.* at 104). The court responded, "So noted." (*Id.*) Although the court did not expressly overrule the objection, the jury returned to the courtroom and the court did not issue any further instructions.

Our review of the entire jury charge reveals that the court adequately conveyed the legal concept at issue. *See Ragan, supra*; *Gomez, supra*. Here, the court's refusal to include the specific language requested by trial counsel did not result in prejudice to Appellant. *See Scott, supra*. Thus, Appellant is not entitled to relief on this claim.

In his second and third issues, Appellant argues that he was not the target of any prior investigation and the police simply "equated suspicious activity with a vehicle with an out of state license." (Appellant's Brief at 17). Further, Appellant contends that the CI "never made a connection between the individual the CI called and the individual who delivered the controlled substance." (*Id.*) Appellant emphasizes that the CI never met or identified Appellant, and the CI's failure to identify Appellant as part of the drug distribution operation shocks one's sense of justice. Appellant concludes the Commonwealth presented insufficient evidence to support his PWID

conviction, and the PWID conviction was against the weight of the evidence.[4]

We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

_____

[4] The arguments in Appellant's brief do not specifically challenge Appellant's conviction for possession of drug paraphernalia. *See* Appellant's Brief at 17 (stating "Commonwealth failed to present sufficient evidence that Appellant delivered a controlled substance," and regarding weight, "evidence presented did not establish that … Appellant delivered a controlled substance").

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

Additionally,

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

The offense of PWID is defined by statute as follows:

### § 780-113. Prohibited acts; penalties

> (a)    The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> *    *    *
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or

> knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

To establish the offense of PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it. *Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa.Super. 2005).

> The trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case. Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant.

*Id.* (quoting *Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa.Super. 2003), *appeal denied*, 577 Pa. 712, 847 A.2d 1280 (2004)). "[A]ll of the facts and circumstances surrounding the possession are relevant and the elements of the crime may be established by circumstantial evidence." *Commonwealth v. Little*, 879 A.2d 293, 297 (Pa.Super. 2005), *appeal denied*, 586 Pa. 724, 890 A.2d 1057 (2005).

Instantly, the Commonwealth presented testimony from Sergeant Baluh, who drove the CI to the shopping center to conduct the controlled purchase of heroin. (*See* N.T. Trial at 79-80). Prior to departing for the shopping center, another officer searched the CI to confirm that no contraband was on the CI's person. (*Id.* at 41, 79). Once at the shopping center, the CI remained in Sergeant Baluh's vehicle until the target vehicle, a black Dodge,

- 12 -

arrived. (*Id.* at 80). The CI entered and exited the Dodge, returned directly to Sergeant Baluh's vehicle, and immediately handed the drugs to Sergeant Baluh. (*Id.*) Subsequent testing confirmed the presence of heroin in the drugs obtained from the driver of the Dodge. (*Id.* at 47).

Officer Tilman and Detective Flythe conducted surveillance during the controlled purchase. (*Id.* at 39, 69). Detective Flythe testified that no one else entered or exited the Dodge after the CI completed the transaction. (*Id.* at 73). As the black Dodge pulled out of the parking lot, Officer Tilman followed the vehicle and requested that Officer Lindsley conduct a traffic stop. (*Id.* at 42). Moments later, Officer Lindsley executed the traffic stop and discovered that Appellant was the driver and sole occupant of the vehicle. (*Id.* at 65-66).

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, the record supports the inference that Appellant delivered the heroin to the CI. *See Sebolka, supra*; *Jones, supra*. Further, the trial court concluded that the guilty verdict did not shock one's sense of justice. (*See* Trial Court Opinion at 7). On this record, we cannot say that the court palpably abused its discretion in ruling on the weight claim. *See Champney, supra*. Therefore, Appellant is not entitled to relief on his sufficiency and weight claims.

In his final issue, Appellant argues that the Commonwealth filed the criminal complaint on October 29, 2014, but he did not proceed to a jury trial

until January 15, 2019. Appellant acknowledges several periods of delay were attributable to the defense, including multiple requests for continuances in 2016 and 2017. Appellant insists, however, that at least seven hundred and thirty-five (735) days of delay were not attributable to the defense. Appellant concludes that the court abused its discretion by denying his Rule 600 motion. Based upon our review of the record, an additional evidentiary hearing is required.

The following principles apply to our review of a speedy trial claim:

> Our standard of review in a Rule 600 issue is whether the trial court abused its discretion. Our scope of review when determining the propriety of the trial court is limited to the evidence in the record, the trial court's Rule 600 evidentiary hearing, and the trial court's findings. We must also view the facts in the light most favorable to the prevailing party[.]

*Commonwealth v. Risoldi*, 238 A.3d 434, 449 n.14 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 244 A.3d 1230 (2021).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to

punish and deter crime.  In considering these matters …, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Martz*, 232 A.3d 801, 809-10 (Pa.Super. 2020) (quoting

*Commonwealth v. Peterson*, 19 A.3d 1131, 1134-35 (Pa.Super. 2011)).

Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600.  Prompt Trial**

**(A)  Commencement of Trial; Time for Trial**

\* \* \*

(2)  Trial shall commence within the following time periods.

(a)  Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\* \* \*

**(C)  Computation of Time**

(1)  For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation.

\* \* \*

(3)(a)  When a judge or issuing authority grants or denies a continuance:

> (i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

> (ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

Pa.R.Crim.P. 600(A)(2)(a), (C)(1), (3)(a).

"Rule 600 generally requires the Commonwealth to bring a defendant on bail to trial within 365 days of the date the complaint was filed." *Commonwealth v. Hunt*, 858 A.2d 1234, 1240 (Pa.Super. 2004) (*en banc*). A defendant on bail after 365 days, but before trial, may apply to the court for an order dismissing the charges with prejudice. *Id.* at 1240-41. To obtain relief, a defendant must have a valid Rule 600 claim at the time he files the motion to dismiss. *Id.* at 1243.

> [A] defendant is not automatically entitled to discharge under Rule 600 where trial starts more than 365 days after the filing of the complaint. Rather, Rule 600 provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time. The adjusted run date is calculated by adding to the mechanical run date, *i.e.*, the date 365 days from the complaint, both excludable time and excusable delay. "Excludable time" is classified as periods of delay caused by the defendant. "Excusable delay" occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance

- 16 -

and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

*Martz, supra* at 810-11 (quoting *Commonwealth v. Moore*, 214 A.3d 244, 248-49 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 224 A.3d 360 (2020)) (internal citations and some quotation marks omitted).

Instantly, the Commonwealth filed the criminal complaint on October 29, 2014. Therefore, the mechanical run date was October 29, 2015. Appellant proceeded to a preliminary hearing on March 12, 2015. Following the preliminary hearing, the court granted Appellant's release on unsecured bail, and it scheduled the formal arraignment for May 11, 2015. The certified record includes numerous documents signed by Appellant, which demonstrate that he received notice of the arraignment date. (**See** Bail Bond Form, dated 3/12/15, at 1; Bail Release Conditions, dated 3/12/15, at 1; Surety Information Page, dated 3/12/15, at 1; Notice of Formal Arraignment, dated 3/12/15, at 1).

Prior to the arraignment, Appellant was transported to state prison for a state parole detainer. Consequently, Appellant did not appear at his formal arraignment, and the court issued a bench warrant on May 11, 2015. Appellant was not arrested on the bench warrant until August 17, 2016. The period of Appellant's unavailability between May 11, 2015 and August 17,

2016 constituted 464 days of delay. In evaluating this period, the court relied on **Baird, supra** and **Wright, supra** to find that the delay was excludable:

> In **Wright**, after twenty-five (25) years had passed since the issuance of a bench warrant for failure to appear, the defendant, who had been charged with Driving Under the Influence and Reckless Driving, moved to dismiss the charges pursuant to Rule 600. The trial court granted the defendant's motion to dismiss, and the Commonwealth appealed, asserting that the court abused its discretion when [the defendant] admitted he had notice of the court proceeding in question, but willfully failed to appear. Relying on [**Baird, supra**], the Commonwealth argued it had no requirement to seek out [the defendant] during the twenty-five (25) year period, where all excludable time resulted from [the defendant's] failure to appear [due to unrelated arrests and incarceration]. The Superior Court agreed, and reversed the order granting dismissal.
>
> \*    \*    \*
>
> In this case, [Appellant] was granted unsecured bail at his Preliminary Hearing on March 12, 2015. [Appellant] signed paperwork to this effect, where his residential address was listed not once, but twice, and the second notation is in [Appellant's] own handwriting. Additionally, [Appellant] signed the surety information page, which also listed the same residential address. [Appellant] had notice of his Formal Arraignment date, which was May 11, 2015. [Appellant] had a state parole detainer and, a few days after the Preliminary Hearing on March 12, 2015, he was transported to state prison. The District Attorney of Dauphin County was not made aware he was sent to state prison. A warrant was issued for [Appellant's] failure to appear. Further, [Appellant] failed to advise the Clerk of Courts of his change of residence at this docket.
>
> Here, like in **Baird** and **Wright**, because [Appellant] had reasonable notice of the court proceedings but failed to appear, the Commonwealth's due diligence in attempting to locate him need not be assessed. [Appellant] undertook to accept the status of bail and assumed responsibility for making himself available. [Appellant] argues that this case

- 18 -

> is distinguishable from **Wright** because here there was never a break in custody and [Appellant] was always under the Commonwealth's dominion. We decline to follow this reasoning, as [Appellant] was not held continuously on this docket. Rather, going back to the crux of the issue, [Appellant] signed his bail piece stating and acknowledging his responsibility to appear and notice was given of the arraignment date; he took no effort to appear, nor did his defense counsel.

(Trial Court Opinion at 10, 12) (internal citations omitted). Under the applicable standard of review, we cannot say that the court abused its discretion in reaching this conclusion. **See Risoldi, supra**. **See also Wright, supra** (holding twenty-five-year period between when bench warrant was issued after defendant's failure to appear at court proceeding and when defendant turned himself in to police was excludable; Rule 600 clock begins to "run again" when defendant is subsequently apprehended for charge at issue; trial court erred in shifting burden to Commonwealth to demonstrate due diligence under such circumstances).

Nevertheless, our analysis does not end here, as there were several more pretrial delays requiring evaluation. After Appellant's arrest on the bench warrant, the court scheduled a listing for September 14, 2016. Prior to that listing, Appellant filed a *pro se* Rule 600 motion. The court conducted a Rule 600 hearing on October 7, 2016, but Appellant did not appear. At the conclusion of the hearing, the court dismissed the *pro se* motion and indicated that the next listing was scheduled for November 16, 2016. On November 17, 2016, the Public Defender's office filed a motion for continuance on Appellant's

behalf. The court granted Appellant's motion and continued the matter until February 2, 2017. On February 2, 2017, Appellant requested another continuance. The court granted Appellant's request and continued the matter until March 1, 2017. Because Appellant caused the delays between September 14, 2016 and March 1, 2017, this period was excludable from the calculation of the adjusted run date. *See Martz, supra*.

The following chart summarizes the delays in bringing the case to trial at this point:

| DATES | ACTIVITY | DAYS DELAY | EXCLUDABLE | ADJUSTED RUN DATE |
|-------|----------|------------|------------|-------------------|
| 10/29/14-3/12/15 | Commonwealth filed criminal complaint; court conducted preliminary arraignment | 134 | No | 10/29/15 |
| 3/12/15-5/11/15 | Court conducted preliminary hearing; court granted Appellant's release on unsecured bail; court scheduled formal arraignment for 5/11/15 | 60 | No | 10/29/15 |
| 5/11/15-8/17/16 | Prior to formal arraignment, Appellant was transported to state prison for a state parole detainer; Appellant did not appear for formal arraignment; court issued bench warrant due to Appellant's failure to appear | 464 | Excludable; Appellant failed to appear at court proceeding, despite having reasonable notice | **2/4/17** |
| 8/17/16-9/14/16 | Appellant was arrested and detained on the bench warrant; docket indicates Appellant posted bail on 8/22/16 | 28 | No | 2/4/17 |
| 9/14/16-11/16/16 | Appellant filed *pro se* Rule 600 motions; Appellant did not | 63 | Excludable; Appellant's | **4/8/17** |

- 20 -

| | appear at Rule 600 hearing; court dismissed *pro se* Rule 600 motion; court did not issue bench warrant, as it decided to wait and see if Appellant appeared at next scheduled listing on 11/16/16 | | pretrial filing created delay | |
|---|---|---|---|---|
| 11/16/16-2/2/17 | Appellant requested continuance; court granted continuance until 2/2/17; Appellant expressly agreed to waive this period for Rule 600 purposes | 78 | Excludable; continuance requested | **6/25/17** |
| 2/2/17-3/1/17 | Appellant requested continuance; court granted continuance until 3/1/17; Appellant expressly agreed to waive this period for Rule 600 purposes | 27 | Excludable; continuance requested | **7/22/17** |

Thereafter, the record reveals that Appellant's case was rescheduled on at least six (6) occasions during the 341-day period between March 1, 2017 and the filing of Appellant's Rule 600 motion on February 5, 2018. The docket entries indicate that Appellant's unavailability created one stretch of delay: the 105-day period from August 2, 2017 through November 15, 2017. Nevertheless, this still leaves 236 days of delay where the record is silent as to causation. Depending on how many of these 236 days were excludable, Appellant might have had a valid Rule 600 claim on the date he filed his motion to dismiss. *See Hunt, supra*.

Significantly, the court did not record which party caused these 236 days of delay, and it did not determine whether the time should have been included

in the computation of the adjusted run date. **See** Pa.R.Crim.P. 600(C)(3)(a)(ii). The transcript from the 2018 Rule 600 hearing and the analysis in the trial court's Rule 1925(a) opinion do not address the 236 days of delay, and the court did not assess the Commonwealth's due diligence in bringing the case to trial during this period. **See Martz, supra**. Based upon the foregoing, the trial court failed to provide an adequate analysis regarding all periods of pretrial delay in the instant case.

Under such circumstances, the most prudent course of action is to remand the matter for the limited purpose of conducting a supplemental Rule 600 hearing where the court can consider the delays that occurred following Appellant's 2016 release from state custody. **See Commonwealth v. Thompson**, 93 A.3d 478 (Pa.Super. 2014) (remanding for trial court to determine whether certain period of delay was attributable to Commonwealth for Rule 600 purposes). **Compare Commonwealth v. Harth**, ___ Pa. ___, ___, 252 A.3d 600, 620 (2021) (holding that remand was unnecessary and, in service of judicial economy, Supreme Court would review record *de novo* and render due diligence determination; regarding remand, "trial court would merely be tasked with reexamining the record and rendering a due diligence determination based thereupon; we are perfectly capable of undertaking such

an endeavor in the name of judicial economy and expediency").[5]   After it receives additional evidence and argument from the parties, the court should identify each period of delay and determine whether it is excludable under Rule 600, as well as whether the Commonwealth acted with due diligence.

Case remanded.  Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/04/2022

---

[5] We note that in **Harth**, the trial court relied upon its own congested schedule as justification for denying the defendant's Rule 600 motion.  In the instant case, however, the court did not consider the role that its schedule might have played in creating the 236 days of delay at issue.  Instead, Appellant's Rule 600 hearing focused exclusively on the period where Appellant was in state prison on a state parole detainer.  Thus, Appellant's case is distinguishable from **Harth** and remand for further, albeit limited, proceedings is required.